**JOHNSON v. GATTEGNO. (No. 1660.)**

(Court of Civil Appeals of Texas. El Paso. Oct. 29, 1924. On Rehearing, Nov. 20, 1924.)

**1. Sales 33—Rule stated as to effect of delivery of goods with expectation of payment, as establishing liability on implied contract.**

Ordinarily liability upon an implied contract is established by showing delivery of goods to person sought to be charged, where delivery is made under circumstance showing plaintiff expected to be paid by person to whom delivery is made.

**2. Sales 33—Ratification of delivery after unauthorized delivery must be shown to render merchant liable for payment of goods.**

In order to charge a merchant with liability for payment of goods delivered to his place of business without his knowledge, intent to appropriate them or ratification of delivery after learning of unauthorized delivery must be shown.

On Rehearing.

**3. Trial 105(2)—Hearsay evidence, though admitted without objection, will not support finding.**

Hearsay evidence, though admitted without objection, is without probative force and will not support a finding.

**4. Sales 52(5)—Evidence held to establish implied contract to pay for goods delivered to defendant without his authority.**

Evidence *held* to show delivery of goods to defendant's authorized agent at his place of business, knowledge of its receipt, and failure to return goods, thus rendering him liable upon an implied contract to pay reasonable value thereof.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by J. W. Johnson against I. Gattegno. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Dyer & Morton, of El Paso, for appellant. S. N. Russell, of El Paso, for appellee.

HIGGINS, J. The appellant, Harry F. Johnson, whose trade name is J. W. Johnson, sued as plaintiff in the court below for the value of certain merchandise sold and delivered to the appellee, doing business as Sheldon Jewelry Company, alleging in three separate counts:

"(a) That plaintiff, at the special instance and request of defendant, bargained, sold, and delivered to defendant the certain merchandise set out in the sworn account marked Exhibit A to the petition, at and for the prices thereon shown, and that by reason thereof the defendant became bound and promised to pay plaintiff said sum of money of eight hundred and forty-nine and 81/100 ($849.81) dollars;

"(b) That by reason of the bargain, sale and delivery of said merchandise to the defendant by plaintiff, defendant agreed to pay so much as said merchandise was reasonably worth, it being alleged that same was worth the said sum of money of eight hundred and forty-nine and 81/100 ($840.81) dollars;

"(c) That, by reason of the receipt and acceptance of said merchandise, it being alleged that same was received and accepted by defendant, defendant became bound and liable to pay plaintiff so much as said goods were reasonably worth at the time, the said sum of eight hundred and forty-nine and 81/100 ($849.81) dollars; and further alleging that no part of said sum had been paid except sixty-five and 10/100 ($65.10) dollars, leaving a balance of seven hundred and eighty-four and 71/100 ($784.71) dollars long past due and unpaid, and which defendant refused to pay, and praying for judgment for said sum with interest and costs, and for general relief."

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The defendant answered, pleading general demurrer, general denial, and a sworn denial of the sworn account.

The proof showed that in March, 1920, some one representing himself to be the defendant, Gattegno, came to plaintiff's place of business in New York City, presenting a card of the Sheldon Jewelry Company, showing thereon the name of I. Gattegno. This party presented the card and wanted to buy some silverware from plaintiff, who was a wholesale silver merchant or jobber. This party placed an order for some silverware, and, on March 24, 1920, plaintiff confirmed the order by letter addressed to Sheldon Jewelry Company, El Paso, Tex.

A part of the order was a crumb sweeper, sold at $3.60 and a mahogany chest sold at $45, the sweeper being delivered to the party presenting the card and the chest at his request : was delivered by plaintiff to another jewelry concern. The balance of the order consisted of silverware which this party bought through plaintiff of Webster Company. That is, plaintiff took this party presenting the card to the office of Webster Company in New York, where he selected the merchandise of the value of $690.56, to be shipped to Sheldon Jewelry Company by Webster Company and charged to Johnson, the plaintiff. A copy of this order, together with the balance of the order, plaintiff sent to Sheldon Jewelry Company in a letter of March 24th.

On May 21, 1920, plaintiff received a letter written on the stationery of Sheldon Jewelry Company and signed by Sheldon Jewelry Company, inclosing a check for $48.60 in payment of the crumb sweeper and mahogany chest above mentioned, which letter reads as follows:

"Inclosed please find check for $48.60. We would like to ask you to send us the order of silverware placed with you by Mr. Gattegno. We wish you will send at once whatever you can by express."

This letter was written by Miss Regina Lavis, the sister-in-law of Gattegno, who lives in his home and who works in his store and has charge of same when he is not there. She says it was written for M. Gattegno, who was a brother of the defendant.

Gattegno says, regarding his sister-in-law: "My sister was in that store running it for me." And again he says regarding her:

"When I am away she runs the store. She did not have authority to write letters for the Sheldon Jewelry Company and sign Sheldon Jewelry Company's name to them. She had no authority to do that. While I was sick she did that."

M. Avila, the driver for the Express Company, testified that he delivered two shipments of the silverware shipped from North Attleboro, Mass., being the factory of the Webster Company, at the place of business of the Sheldon Jewelry Company and identified the receipts therefor.

H. Lavis, a brother of Miss Lavis and a brother-in-law of the defendant, testified that all of the merchandise in question was received at the place of business of the Sheldon Jewelry Company, and that he helped to unpack and check same in the store, and he says that he did this at the instance of M. Gattegno, the brother of defendant. H. Lavis stayed around the store and assisted when he was needed, although the defendant says he was not employed. But the defendant's books showed that H. Lavis was waiting on about as many customers as anybody during the period in the spring and early summer of 1920 when the matters in controversy took place.

The defendant knew that this merchandise had been received at his store. He says: "I presume that the goods came to the Sheldon Jewelry Company," although he says that he never ordered the merchandise, but that his brother placed the order.

The merchandise came by express and was received on June 6th and June 7th, and on the latter date, and on the stationery of defendant, a letter was written to plaintiff as follows:

"We received the crumb sweepers O. K. with the exception of one without a handle, No. 106. Please advise if you can send us the handle or if we return the sweeper."

This was also written by Miss Lavis.

Again on June 22, 1920, another letter was written, under the same circumstances, to the plaintiff by the defendant, as follows:

"In checking up the goods we found a defective pair of candle sticks. We are returning same to you by parcel post. Please send us a credit bill for same and oblige."

The defendant issued the check for $48.60, which was inclosed in the letter of May 20th. He says: "I issued this check for $48.60." But he claims he did it for his brother. He could not produce the check or the stub therefor.

The store was about 60 feet by 80 feet in size and the merchandise stayed there for a time before M. Gattegno took same to Mexico. One witness says it was there for several months; another said it was there only a short time. Gattegno says:

"If this stuff came addressed to the Sheldon Jewelry Company with Johnson's name on it, or Webster Company's name on it, my brother had authority to open it because he ordered the goods. He would have known it was his goods."

Defendant says that he never ordered the goods and claimed that he knew nothing about the entire transaction, and that no one had authority to open letters addressed to Sheldon Jewelry Company.

Miss Lavis states that she wrote the letters in a friendly way for M. Gattegno; and

that she supplied the money out of the cash drawer for paying the express as these packages were delivered to the Sheldon Jewelry Company.

The case was submitted to a jury on special issues, asking:

(1) If the merchandise was purchased in the name of the Sheldon Jewelry Company? To which the jury answered, "No."

(2) Whether the defendant knew if the goods had been ordered in the name of Sheldon Jewelry Company? To which the jury answered, "No."

(3) Whether defendant acquiesced in the purchase of the goods in the name of the Sheldon Jewelry Company "if same were purchased in the name of Sheldon Jewelry Company?" To which the jury answered, "No."

And at the request of plaintiff:

A. Whether or not the merchandise was shipped to and delivered to Sheldon Jewelry Company at its place of business in El Paso? To which the jury answered, "Yes."

B. Whether "if same were purchased in the name of the Sheldon Jewelry Company" the defendant acquiesced in the removal thereof from his store? To which the jury answered, "No."

C. What was the reasonable value of the merchandise? To which the jury answered, "$759.61."

On this verdict both plaintiff and defendant filed motions for judgment. The court granted defendant's. motion and overruled the plaintiff's. The foregoing statement, with minor modifications, is taken from appellant's brief. It is substantially correct and sufficient for the disposition of the questions presented by the appeal. It is first contended that the answers to issues 1, 2, and 3 are immaterial and judgment should have been rendered for appellant upon the answer to issue A.

[1, 2] Ordinarily liability upon an implied contract is established by showing delivery of goods to the person sought to be charged, where the delivery is made under circumstances which show that the plaintiff expected to be paid for the same by the person to whom the delivery is made. These are cases ordinarily where no question arises as to knowledge on the part of the defendant of the circumstances connected with the delivery. But it cannot be said that a merchant becomes liable to pay for goods which have been delivered at his place of business without his consent, unless it be shown that after he learned of their delivery he in some manner ratified the delivery or appropriated them to his own use. It is a matter of common knowledge that deliveries are made by carriers to merchants of which the merchant has no knowledge at the time, and, in order to charge him with liability for the payment of goods delivered at his place of business, it must be shown that, after learning of the unauthorized delivery, he in some manner evidenced an intention to appropriate them or ratify the delivery. This may be shown by the retention of the goods after he learns of their receipt and in various other ways.

The finding relied upon merely shows that the silverware was shipped to and delivered to the Sheldon Jewelry Company, and, under the defendant's theory of the case, this alone did not render him liable to pay for same. The fact that Henry Lavis and Regina Lavis had general authority to receipt for goods delivered does not impose liability upon the defendant as a matter of law. Before liability to pay for this merchandise can be imposed upon this defendant, knowledge must have been brought home to him that delivery had been made to him for himself rather than to him for his brother M. Gattegno. Upon this phase the evidence is conflicting.

Error is assigned to the refusal of a peremptory instruction to find for appellant; also to the refusal of a number of requested issues. The evidence shows that the packages containing the silverware were delivered at defendant's place of business and receipted for by his authorized agents, but there is some evidence that it came addressed to M. Gattegno, care of Sheldon Jewelry Company. It is undisputed that M. Gattegno thereafter took the goods to Mexico and defendant received no benefit from them. In view of the evidence of the manner in which the packages were addressed it could properly be found that, in receiving the silverware, the Sheldon Jewelry Company acted simply as the agent of M. Gattegno. Hence such receipt and subsequent delivery to M. Gattegno imposed no liability upon appellee. In the state of the evidence the instruction was properly refused.

As to the issues requested by appellant and refused, these present no error, for the reason that they are either immaterial or relate to evidentiary matters, and do not call for findings upon the controlling ultimate issues of fact upon which the liability, if any, of the defendant depended.

It is shown beyond any reasonable doubt that the goods were ordered by M. Gattegno. Assuming that they were ordered in the name of the Sheldon Jewelry Company the next inquiry is as to his authority so to do. This was not submitted nor requested. If there was no such authority the next question is whether the defendant ratified the purchase in the name of the Sheldon Jewelry Company. This was in effect submitted in the third issue and found against appellant. These were the controlling issues upon the alleged express contract.

The controlling issue upon the alleged implied contract to pay because of the delivery to the Sheldon Jewelry Company was whether the silverware was delivered to the Sheldon Jewelry Company for itself or as

agent for M. Gattegno. This was not requested to be submitted. As indicated above there is evidence that the packages came addressed to M. Gattegno, care of Sheldon Jewelry Company. This was sufficient to raise an issue as to the capacity in which the Sheldon Jewelry Company acted in receiving the packages. Furthermore, there is other evidence in the record, not necessary to detail, which tends to rebut the appellant's right of recovery upon either an express or implied contract.

Finding no reversible error, the judgment is affirmed.

### On Rehearing

[3] Upon further consideration the conclusion has been reached that we erred in the finding that the evidence is conflicting upon the issue of whether the delivery of the goods was to the defendant for himself or his brother M. Gattegno, and that there was some evidence that it came addressed to M. Gattegno, care of Sheldon Jewelry Company.

This finding of fact was based upon the testimony of defendant as follows:

"According to my knowledge these packages came in addressed to my brother care of the Sheldon Jewelry Company. My brother told me that. He wrote that to me and I showed the letter to Mr. Dyer in his office. * * *"

This evidence was hearsay. There are at least two decisions by Courts of Civil Appeals which hold that hearsay evidence, when admitted without objection, is not without probative force and will support a finding. Tel. Co. v. Hirsch (Tex. Civ. App.) 84 S. W. 394; Speed v. Sadberry (Tex. Civ. App.) 190 S. W. 781. However, in Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, Justice Dibrell said:

"There is in the record no other fact or circumstance relative to this subject established by any competent testimony. The testimony of the witness to the effect that after the date of the deed's execution by Patillo he listed the property for sale, and inquired often as to whether it could be sold, and of another that Patillo refused to sell him a portion of the land, but offered to sell the entire tract, was not competent testimony to prove any issue in the case. The only relevant purpose for which this testimony could have been offered was for the purpose of showing that Patillo did not execute the deed in question for the purpose of conveying the land therein described. For this purpose it was not admissible, being hearsay evidence and in disparagement of the grantor's deed duly executed. Hays v. Hays, 66 Tex. 609, 15 S. W. 895; Snow v. Starr, 75 Tex. 416, 12 S. W. 673; Gilbert v. Odum, 69 Tex. 670, 7 S. W. 510; Delvin on Deeds, § 281a.

"While the admission of this testimony was not objected to by counsel for defendants, that fact would be important only in the event its admission was afterwards complained of as violative of a right reserved to defendants. Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case."

Again, in Southern Surety Co. v. Nalle & Co. (Tex. Com. App.) 242 S. W. 197, in an opinion expressly approved by the Supreme Court, it was said:

"The declarations of the agent, Coleman, under consideration were purely voluntary, and were made in a casual conversation and not in connection with, or explanatory of, any transaction in the line of his duty in which he was engaged at the time. He was not so engaged, but was on a hunting and fishing trip for his own pleasure and recreation. Such declarations were in the most material part a mere narration of a past transaction. They were incompetent as evidence against plaintiff in error.

"Evidence in itself wholly incompetent, and therefore without probative force, gains no vitality because admitted without objection. It will not support a verdict by a jury or a finding of fact by a court."

When the Southern Surety Case was before the Court of Civil Appeals the majority of that court ruled contrary to the conclusion of the Commission of Appeals, Chief Justice Key dissenting. See 231 S. W. 402. An examination of the majority and dissenting opinions in the Court of Civil Appeals will serve to emphasize the far-reaching effect of the ruling by the Commission of Appeals.

Under the decisions cited we are constrained to hold that there is no evidence of any probative effect to support a finding that the packages containing the merchandise were addressed to M. Gattegno, care of Sheldon Jewelry Company.

[4] Eliminating this incompetent evidence, the undisputed evidence shows liability by the defendant upon an implied contract. It shows delivery to his authorized agent at his place of business, knowledge upon his part or his authorized agent of its receipt, and a failure to return the goods. Under these circumstances, and no competent evidence to show that he received the goods as the agent of his brother, M. Gattegno, he became liable upon an implied contract to pay the reasonable value thereof; therefore the peremptory instruction to that effect requested by the plaintiff should have been given. For this reason the judgment will be reversed.

In addition to the evidence stated in the main opinion, it may be well to add that the receipts for the goods issued by the American Railway Express to the consignor at North

Attleboro, Mass., show that the goods were consigned to the Sheldon Jewelry Company, direct. Its delivery sheets at El Paso show the same thing. The testimony of the shipping clerk of the consignor shows a shipment direct to the Sheldon Jewelry Company. There is other evidence to the same effect which need not be detailed. It is sufficient to say that upon the entire record reasonable minds could not differ in the conclusion that the delivery of the goods to appellant, and his failure to return same, imposes liability, in the absence of any competent evidence to show that in receiving the same he acted as agent for M. Gattegno. This phase of his defense apparently has not been fully developed, for which reason the case will be remanded for retrial rather than rendered.

The motion for rehearing is granted, and the cause reversed and remanded.