FERROUS PRODUCTS CO., Inc., Appellant.

v.

GULF STATES TRADING CO., Inc., Appellee.

No. 13269.

Court of Civil Appeals of Texas.

Houston.

April 9, 1959.

Rehearing Denied April 30, 1959.

Boone & Kraft, James C. Boone; Karl E. Kraft, Houston, for appellant.

Witts, Geary, Hamilton & Brice, William C. Koons, Dallas, for appellee.

BELL, Chief Justice.

Appellee sued appellant for the value of certain steel beams. He recovered judgment for $1,892.80 together with attorney's fees of $500. Recovery was allowed by the Trial Court on the theory of an implied contract, the appellant having received and disposed of the beams.

There is no real dispute in the facts. On or about May 12, 1955, a man named Borden contacted Mr. Chenowith, who was employed by appellee, and asked if appellee would be interested in selling the beams to Metallic Building Company. Borden was in Houston and Chenowith was in Dallas. Chenowith answered that it would, and on the same day directed T. E. Mercer Truck Co. to deliver the beams from appellee's Houston yards to Metallic Building Company, 4601 Holmes Road, Houston. Mercer issued its bill of lading. The bill of lading showed the consignor to be appellee and Metallic Building Company was shown to be the consignee. When the beams were delivered to the address shown, an employee at the warehouse called Mr. Thielemann, Vice-President and General Manager for appellant, about the shipment. Mr. Thielemann told him the shipment was for appellant. An authorized representative of appellant scratched out the name of Metallic Building Company and inserted appellant's name and took delivery of the beams for appellant. All of this was unknown to appellee. Mr. Thielemann explained that on May 10 appellant told Borden it would take some beams like those delivered and that at the same time it issued its purchase order to Borden; that when the shipment arrived the receiving clerk had no information about the shipment to Metallic Building Company, but did have a copy of the purchase order issued to Borden by appellant. The shipping clerk then contacted Mr. Thielemann.

On May 16 appellee sent its invoice to Metallic Building Company. On May 18 appellant wrote appellee that Metallic Building had received the invoice, but that Metallic had not ordered the material but appellant had, though the order was direct to Borden. Appellant returned the invoice and sent appellee a copy of its purchase order to Borden and a copy of the invoice from Mercer for trucking the materials. Appellant paid the trucking charges.

On May 24 appellee acknowledged the letter of May 18 and stated Borden had arranged for the shipment to appellant but advised them to make out the invoice as they did, that is, to Metallic Building Co. It is to be noted, however, that Mr. Chenowith testified that appellee sold to Metallic and never knew appellant in the matter until receipt of the letter of May 18. This date was after appellant had taken the beams and sold them on their own account to a third person.

Since Borden was indebted to appellant, appellant gave him credit on his account for the value of the beams.

The findings of fact filed by the Trial Court were in substance the facts above related and the Court found that appellant by changing the bill of lading, taking the goods and appropriating them to its use and benefit, agreed to pay the reasonable cash market value of the goods.

Appellant contends as follows:

1. Since Ferrous made an express contract with Borden for the steel beams, there can be no implied contract, an implied contract existing only if there is no express contract.

2. Title passed out of Gulf States when the goods were shipped and there could be no conversion of the property as to Gulf States.

3. The evidence shows that Ferrous never intended to pay Gulf States but intended to pay Borden and there can be no implied agreement to the contrary.

There are really eleven points of error assigned, but the above represent the substance of appellant's contentions.

The fact situation with which we are faced is just this. Gulf States, at the instance of Borden, shipped its merchandise to Metallic Building Company by way of T. E. Mercer Trucking Co. The bill of lading showed on its face that Gulf States was consignor and Metallic Building Company was consignee. When the material arrived at its destination, a warehouse used by Ferrous and Metallic, there was nothing in the hands of the receiving clerk to show an order by Metallic. The clerk contacted the Vice-President and General Manager of Ferrous, who told him the material was for Ferrous. This, despite the fact that such officer knew at the time that the bill of lading showed on its face that Gulf States had shipped the material not to Ferrous and not to Borden. Ferrous took the material and immediately sold it and appropriated the proceeds of the sale to its use and benefit by giving Borden credit on the debt he owed Ferrous. It is true

that Ferrous had ordered similar material from Borden. This was unknown to Gulf States until after Ferrous had sold the material. It is true also that after the appropriation and sale Ferrous wrote Gulf States stating they ordered from Borden and would deal with Borden direct, thus evidencing the absence of an intention to pay Gulf States. Then Gulf States, in an effort to collect for materials belonging to it, invoiced Ferrous.

■ We have concluded the trial court was correct in rendering judgment for Gulf States for the market value of the steel beams.

Title had not passed out of appellee at the time appellant appropriated the materials, because Metallic had not in fact ordered the material and appellee intended at that time to sell only to Metallic. Appellee had not sold to Borden or Ferrous. If Metallic had in fact ordered the merchandise, it being shipped on a straight bill of lading, title on shipment would, as contended by appellant, have passed to Metallic.

When Ferrous took the merchandise and appropriated it to its own use, it was guilty of a conversion. It wrongfully exercised dominion and control over the property of appellee to the exclusion of the exercise of such rights by the owner. This amounts to a conversion. France v. Gibson, Tex. Civ.App., 101 S.W. 536, no writ history; Zerr v. Howell, Tex.Civ.App., 88 S.W.2d 116, no writ history; Stidham v. Lewis, Tex.Civ.App., 23 S.W.2d 851, no writ history; Compton v. Farrington, Tex.Civ. App., 16 S.W.2d 345, no writ history; Forrest v. Burns, Tex.Civ.App., 57 S.W.2d 1111, error dismissed.

The fact that Ferrous may have acted in good faith in thinking this material was that ordered by them from Borden is not material. Good faith of the person does not prevent the appropriation from amounting to a conversion. Moore v. Conway,

Tex.Civ.App., 108 S.W.2d 954, no writ history, and numerous authorities there cited; 14 Tex.Jur. p. 512.

■ The conversion amounted to tortious action on the part of appellant. However, the appellee is not confined to his remedy in tort. He may waive the tort and sue on the contract implied in law, or, more accurately, quasi-contract. At common law the tort action to recover the value of the goods was trover. However, at common law the owner could waive this remedy and sue in assumpsit on the promise implied in law. Gould v. Baker, 12 Tex. Civ.App. 669; 35 S.W. 708; Hitson v. Hurt, 45 Tex.Civ.App. 360, 101 S.W. 292, writ ref. While we do not, of course, have the common law forms of action in Texas, the substance of the actions has been retained and by alleging and proving the facts that would entitle you to relief under a particular form of action at common law, you may obtain the relief that such form of action would entitle you to.

Appellant says, however, that there is an implied promise only if there is no express contract, and that here there was an express contract. This is true because if the parties to the action have expressly covered the subject-matter, there is no need for any implication and they will be held to what they have expressly agreed upon. However, all of the cases so holding that have been cited us and which we have found are cases where the suit was between parties to the express contract. We have been cited no authority and have found none, where the rule was applied, when the suit was between a party to the contract and one not a party to it and having no rights under it. Here Gulf States was not a party to the contract between Ferrous and Borden and claimed nothing under it. The relations between Gulf States and Ferrous were independent of the agreement between Borden and Ferrous.

■ Appellant further says there can be no promise implied on its part, because all facts and circumstances show the absence of any assent by it to pay appellee for the material, but show assent to pay Borden only. Appellant confuses a contract implied in fact and one implied in law, or, more accurately, a quasi-contract. The distinction is pointed out by Professor Corbin in his work on Contracts. In Vol. 1, Sec. 17, he states:

"Sometimes a promise is said to be 'implied in law,' such a promise being distinguished from a promise that is implied in fact. * * * A promise that is implied in fact is merely a tacit promise, one that is inferred in whole or in part from expressions other than words on the part of a promisor. It is a question of fact whether or not in a particular case a promise should be so inferred. When a promise is said to be 'implied in law,' it is meant that neither the words nor the other conduct of the party involved are promissory in form or justify any inference of a promise. The term is used to indicate that the party in question is under a legally enforceable duty, just as he would have been if he had in fact made a promise. [Assumpsit] * * * The legal duties that were enforced by the use of this fictitious promise have in recent years come to be described as quasi-contractual."

In Section 19, the author states this:

"A distinction has long been suggested between contracts implied in fact and contracts implied in law. * * * Something very different is meant by the term 'contract implied in law'; it is an obligation that is created by the law without regard to expressions of assent by either words or acts. Some confusion was caused by the use of the term 'implied contract' to refer to such different kinds of obligation; and the tendency is now strong to substitute the term 'quasi-contract' in place of the term 'contract implied in law.'

* * * * * *

"A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent."

See also Miller v. Miller, Tex.Civ.App., 292 S.W. 917, writ. ref.; 17 C.J.S. Contracts §§ 4, 6, pages 317 et seq. and 322 et seq.; Johnson v. Gattegno, Tex.Civ.App., 267 S.W. 740, no writ history.

The obligation on the part of Ferrous in this case is imposed by law under the facts regardless of its assent. It received the benefit of property belonging to appellee and the law will make Ferrous pay appellee for it because justice, honesty and fair dealing require the legal implication of a promise to compensate the owner.

Appellant complains of the allowance of attorney's fees. His complaint is threefold, that is, that under Article 2226, Vernon's Ann.Civ.St., attorney's fees are not recoverable where suit is on a contract implied in law; that the suit was not properly one under Rule 185, Texas Rules of Civil Procedure, for goods, wares and merchandise sold; and, there was no evidence as to what was a reasonable attorney's fee in Harris County.

We overrule appellant's contentions. Rule 185 provides in part: "When any action or defense is founded upon an open account *or other claim for goods, wares and merchandise* * * *." (emphasis ours), and is supported by oath it shall be prima facie evidence. The only requirement seems to be that the claim be for goods, wares and merchandise. There is no limitation as to how the claim must arise. We think the statute is broad enough to cover a situation where goods, wares and merchandise are received by a person, whether it be under express contract, one implied in fact, or, as here, one implied in law.

Article 2226 provides in part that attorney's fees are recoverable where there is a valid claim for material furnished. There is no limitation on the right of recovery because of the manner in which the claim arose. It is sufficient to encompass a claim for materials furnished, as here, under a quasi-contract or one implied in law.

We have found no case, and none has been cited us, where this question has been passed on.

The evidence bearing on attorney's fees came from counsel for appellee who was from Dallas. He testified that his firm had spent in excess of 65 hours in preparation of the case prior to the commencement of the trial on its merits. He then testified to the usual and customary charges made in Dallas. He further testified the appellee was asking a fee of $500 which was below what was usually charged in Dallas, and, from what he understood from the Bar Association, also was below charges usually made in Harris County.

Appellant insists there was no competent evidence of what a reasonable fee in Harris County would be.

There was before the Trial Court, who found the facts, evidence as to the amount of time spent in the preparation of the case. The Court had the pleadings before him and he knew how long it took to try the case before him. In this case trial was to the Court without a jury, so he had to determine the facts. It was not necessary to have opinion evidence as to a reasonable attorney's fee. The Judge had all essential facts before him as to the work done, the time spent and the nature of the controversy. The Trial Court could take judicial notice of what would be a reasonable attorney's fee. McCormick and Ray, Texas Law of Evidence, Sec. 207, p. 241; Franklin Life Ins. Co. v. Woodyard, Tex.Civ.App., 206 S.W.2d 93, no writ history; American Nat. Ins. Co. v. Points, Tex.Civ.App., 131 S.W.2d 983, error dism., cor. judg.

The judgment of the Trial Court is affirmed.