Crull v. Rhodes

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-235-CV

CINDY CRULL APPELLANT

V.

LYNN RHODES, DIANA RHODES, APPELLEES

THE ESTATE OF GEORGIE RHODES

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Cindy Crull appeals from the grant of summary judgment in favor of Appellees Diana Rhodes and Lynn Rhodes, individually and as executor for the estate of Georgie Rhodes (collectively “the Rhodes”).  In five issues,  Crull addresses the grounds presented by the Rhodeses in their motion for summary judgment, asserting that (1) she had standing to sue, (2) the Rhodeses owed her a fiduciary duty, (3) her claim for breach of fiduciary duty was not barred by the statute of limitations, (4) her claim for breach of contract was not barred by the statute of limitations, and (5) she did not fail to mitigate her damages.  We affirm the judgment of the trial court.

II.  Factual Background

Crull had twenty years of experience operating fitness facilities, having operated the Sweatshop and the Athletic Center of Lewisville from 1976 until 1996.  Both of these entities had their charter forfeited by the Secretary of State in 1995 and 1998, respectively.  Sometime between these two dates, however, Crull and some or all of the Rhodeses had discussions about opening a Gold’s Gym with Matt Liebhardt, Diana Rhodes’s finance.
(footnote: 2)  Crull asserts that it was her understanding that she, along with Diana Rhodes, Matt Liebhardt, and Georgie Rhodes, would enter into a joint venture with the object of operating a Gold’s Gym.  Crull was to contribute the physical assets from her previous gyms, along with her expertise and customer contacts, while Diana Rhodes, Matt Liebhardt, and Georgie Rhodes were to contribute cash, with Georgie Rhodes being the financial guarantor of the overall plan.  Apparently, in furtherance of this plan, Georgie Rhodes applied in late 1996 for a small business loan and incorporated a Texas corporation named Workout Experience, Inc.; filed an assumed name certificate in Denton County to operate a business under that name; applied for a Gold’s Gym franchise; and searched for a new business location with Diana Rhodes.  

Initially, the new business was going to be located on Fox Avenue, but on January 13, 1997, Georgie and Diana Rhodes signed a lease in a different location, owned by Minyard Food Store, in a former grocery store.  The lease took place without Crull’s knowledge after she had moved her equipment into the Fox Avenue location.  That same day Crull, Diana Rhodes, and Matt Liebhardt signed a “letter of contract” that indicated it was a “temporary agreement of partnership between Diana Rhodes and Matt Liebhardt in regards to them buying into the Workout Exp. Inc. d/b/a Gold’s Gym.”  The “letter of contract” listed the names Crull, Diana Rhodes, and Matt Liebhardt followed by the percentages 55%, 25%, and 20%, which apparently referred to prospective ownership.  The document also indicated that “the full contract letter of agreement is to be signed at a later date with all guidelines.”  The document further stated that “each of the two [sic] above parties have already contributed monies towards their portion of stock . . . .” 

On January 14, 1997, Crull’s equipment was moved from the Fox Avenue location to the Minyard Food Store location, and Crull had an architect begin a set of drawings for the gym.  Later that month, Diana Rhodes, Matt Liebhardt, and Crull went to Venice, California for a Gold’s Gym orientation and training session. 

However, in February of 1997, the Rhodeses refused to sign the SBA loan for the project, and subsequently Lynn Rhodes told Crull that they were pulling out of the venture.  Crull also testified that in March of 1997 she learned that the Rhodeses were not going to participate in the endeavor.  Crull testified that she was not told to remove her equipment at that time and that she began looking for other investors to go forward with the project.  She contacted Minyard Food Store, the owner of the proposed gym location, and obtained permission to leave her equipment there while she determined if she could work out another deal.  On March 19, 1997, Crull wrote a letter to Minyard Food Store stating that “I am currently assisting the owners and investors in the restructing of the company after the abrupt withdraw [sic] of the Rhodes,” and also on that date authored a “letter of contract agreement” indicating that she and Matt Liebhardt were reclaiming stocks previously set aside for Diana Rhodes, such that Crull would be an 80% owner and Matt Liebhardt a 20% owner.  The document is not signed by Matt Liebhardt. 

On March 22, 1997, Crull prepared a “letter of proposal” indicating that Diana Rhodes had “deceived all parties involved including her family and friends” and that “there has never been a question about them [Georgie Rhodes and Diana Rhodes]” following through with the original agreement “until a couple weeks ago.”  She also expressed the concern that Minyard Food Store might seize her property located in their building and acknowledged that the proposed project, as originally structured, was at an end “since the Rhodes chose to pull out.” 

In June of 1997, the Rhodeses attorney orally informed Crull that she was to remove her furniture, fixtures, and equipment from the Minyard Food Store location although, according to Crull, the Minyard Food Store’s representative gave her permission to leave the equipment in the Minyard Food Store building until she could locate new investors.  The equipment remained on site.  On July 3, the Rhodeses had Crull’s equipment removed without her consent or notice and indicated that the equipment would not be returned unless she paid for the moving and storage fees and released them from any liability surrounding their purported contract.  The Rhodeses then sold the equipment and kept the money from the sale.  This resulted in the original lawsuit by Crull against the Rhodeses and ultimately this appeal.

III.  Limitations

In her third and fourth issues, Crull posits, “Did Cindy Crull miss the statute of limitations on her breach of fiduciary duty claim,” [issue three] or “her breach of contract claim” [issue four]?  We will address these issues in reverse order.

A.  Breach of Contract

Crull filed her original petition on May 25, 2001.  The four-year statute of limitations applies both to a breach of fiduciary duty claim and to a breach of contract claim or settlement of partnership accounts.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 16.004(a)(5), (c) (Vernon 2002).  Crull argues that her claims, contained in her first and second original amended petitions, are not based on the original agreement between the parties but rather on an implied contract that arose after the original contract was breached and on the duties the Rhodeses allegedly had to protect her belongings at the Minyard Food Store location after the breach.  

Neither party favors the court with a discussion of the legal requirements of such an implied contract.  Nevertheless, there are two types of implied contracts, implied-in-fact and implied-in-law.  An implied-in-fact contract arises when the intentions of the parties are not expressed in writing, but an obligation is implied from the parties’ acts or conduct.  
Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.
, 625 S.W.2d 295, 298 (Tex. 1981).  An implied-in-fact contract must arise from the conduct of the parties demonstrating that there was a meeting of the minds on the terms of the contract.  
Williford Energy Co. v. Submergible Cable Servs., Inc
., 895 S.W.2d 379, 384 (Tex. App.—Amarillo 1994, no writ).  Contracts implied-in-law, also known as quasi- or constructive contracts, are obligations that are created by law on the grounds of reason and justice.  
Ferrous Prods. Co. v. Gulf States Trading Co.
, 323 S.W.2d 292, 295 (Tex. Civ. App.—Houston 1959), 
aff’d,
 332 S.W.2d 310 (Tex. 1960).  

Under the facts of this case, however, Crull received permission from Minyard Food Store, not the Rhodeses, to store her equipment in the Minyard Food Store building after the Rhodeses backed out of the endeavor.  The Rhodeses, however, held the lease on the building from Minyard Food Store, and Crull did not negotiate with them about keeping her equipment there.  Further, she presents no evidence that there was any consideration on her part to the Rhodeses for the maintenance of her property in their leased premises.  Under the facts before us, we cannot find any mutual intent to contract after March 1997 or any consideration given by Crull to support her alleged implied contract, whether it be implied-in-fact or implied-in-law.  

The factual allegations contained in Plaintiff’s Second Amended Original Petition, following the Rhodeses’ backing out of their venture, are as follows:   19. By the time the Rhodes backed out of the deal, Cindy Crull had a strong reliance interest in it insofar as she had already shut down her existing business and move [sic] all of her equipment into the Minyards.

20. Cindy Crull began looking for other investors to go forward with the project.  She also contacted Minyards and obtained permission to leave her equipment in the Minyards store while she was trying to put another deal together.

21. In or about June 1997, the Rhodes verbally demanded that Cindy remove the furniture, fixtures and equipment Crull had previously delivered to the Minyards location but did not offer to help pay for the move or pay for storing the equipment until Cindy could put together another gym.

22. On or about July 3, 1997, the Rhodes removed Crull’s equipment from the Minyards without her consent.  Crull made repeated demands upon the Rhodes for return of the equipment but they refused to return it unless Crull paid for the moving and storage.  The Rhodes then sold the equipment and kept the money.  To date the Rhodes have refused to pay Crull for the equipment.

With regard to Crull’s cause of action for breach of contract based on these facts, her pleadings state as follows:

By their conduct . . . defendants Diana Rhodes, Georgia Rhodes, and Lynn Rhodes made representations and promises and took actions that created a contract with Cindy Crull that was either express or implied in fact or in law.  Plaintiff, Cindy Crull, relied on the representations and promises of the Defendants 
and delivered valuable consideration to the enterprise envisioned by the discussions and agreements of the parties
.  In so doing she satisfied all conditions precedent to the formation of a contract with Diana Rhodes, Georgia Rhodes, and Lynn Rhodes.  Defendants’ 
breach of contract caused the new business to fail 
and caused Crull to lose the value of her investment in it.  [Emphasis supplied.]

It is readily apparent from the factual assertions and the pleadings that the contract envisioned under the scenario is the original alleged contract to establish a Gold’s Gym.  It is not concerning some implied contract 
that arose after the alleged breach of this contract
.  Hence, there is no pleading to support the contract on which she now sues.  For the forgoing reasons, we find that the statute of limitations had run on any contract regarding establishing a Gold’s Gym by the time of the filing of Crull’s original petition in May 2001, and no subsequent contract existed, nor was a subsequent contract pled.  
See
 
Tex. Civ. Prac. & Rem. Code Ann
.
 § 16.004
(c)
.

B.  Breach of Fiduciary Duty

If a fiduciary duty arose, it did so due to the “temporary agreement of partnership” signed in January 1997.  However, by Crull’s own admission in her letter of March 27, 1997, that partnership had ended in March of 1997.  There is no evidence before this court that any further fiduciary relationship was established between the parties, particularly under these circumstances where the lease of the Minyard Food Store premises was not in Crull’s name and her permission to be on the premises was sought from Minyard Food Store and not from the lessee, the Rhodeses.  Therefore, we likewise find that by the time Crull’s original petition was filed in May 2001, the statute of limitations had run on her breach of fiduciary duty claim.  
See
 
Tex. Civ. Prac. & Rem. Code Ann. § 
16.004(a)(5). 
 
We
 
overrule Crull’s third and fourth points.
(footnote: 3)
IV.  Conclusion

Having overruled Crull’s third and fourth points, we affirm the judgment of the trial court.

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED:  March 31, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The evidence is in dispute as to who initiated the discussions concerning the Gold’s Gym, who was to participate (i.e., to what extent and in what capacity), and who would own and operate the proposed business.

3:
Because we overrule Crull’s third and fourth points, it is unnecessary for us to reach her other points.  See 
Tex. R. App. P.
 47.1 (stating that appellate court must address every issue necessary for final disposition of the appeal).