COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-235-CV
 
 
CINDY CRULL                                                                       APPELLANT
 
V.
 
LYNN RHODES, DIANA RHODES,                                             APPELLEES
THE ESTATE OF GEORGIE RHODES
 
 
------------
 
FROM THE 393RD DISTRICT COURT 
OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Appellant 
Cindy Crull appeals from the grant of summary judgment in favor of Appellees 
Diana Rhodes and Lynn Rhodes, individually and as executor for the estate of 
Georgie Rhodes (collectively “the Rhodes”). In five issues, Crull addresses 
the grounds presented by the Rhodeses in their motion for summary judgment, 
asserting that (1) she had standing to sue, (2) the Rhodeses owed her a 
fiduciary duty, (3) her claim for breach of fiduciary duty was not barred by the 
statute of limitations, (4) her claim for breach of contract was not barred by 
the statute of limitations, and (5) she did not fail to mitigate her damages. We 
affirm the judgment of the trial court.
II. Factual Background
        Crull 
had twenty years of experience operating fitness facilities, having operated the 
Sweatshop and the Athletic Center of Lewisville from 1976 until 1996. Both of 
these entities had their charter forfeited by the Secretary of State in 1995 and 
1998, respectively. Sometime between these two dates, however, Crull and some or 
all of the Rhodeses had discussions about opening a Gold’s Gym with Matt 
Liebhardt, Diana Rhodes’s finance.[2]  Crull 
asserts that it was her understanding that she, along with Diana Rhodes, Matt 
Liebhardt, and Georgie Rhodes, would enter into a joint venture with the object 
of operating a Gold’s Gym. Crull was to contribute the physical assets from 
her previous gyms, along with her expertise and customer contacts, while Diana 
Rhodes, Matt Liebhardt, and Georgie Rhodes were to contribute cash, with Georgie 
Rhodes being the financial guarantor of the overall plan. Apparently, in 
furtherance of this plan, Georgie Rhodes applied in late 1996 for a small 
business loan and incorporated a Texas corporation named Workout Experience, 
Inc.; filed an assumed name certificate in Denton County to operate a business 
under that name; applied for a Gold’s Gym franchise; and searched for a new 
business location with Diana Rhodes.
        Initially, 
the new business was going to be located on Fox Avenue, but on January 13, 1997, 
Georgie and Diana Rhodes signed a lease in a different location, owned by 
Minyard Food Store, in a former grocery store. The lease took place without 
Crull’s knowledge after she had moved her equipment into the Fox Avenue 
location. That same day Crull, Diana Rhodes, and Matt Liebhardt signed a 
“letter of contract” that indicated it was a “temporary agreement of 
partnership between Diana Rhodes and Matt Liebhardt in regards to them buying 
into the Workout Exp. Inc. d/b/a Gold’s Gym.” The “letter of contract” 
listed the names Crull, Diana Rhodes, and Matt Liebhardt followed by the 
percentages 55%, 25%, and 20%, which apparently referred to prospective 
ownership. The document also indicated that “the full contract letter of 
agreement is to be signed at a later date with all guidelines.” The document 
further stated that “each of the two [sic] above parties have already 
contributed monies towards their portion of stock . . . .”
        On 
January 14, 1997, Crull’s equipment was moved from the Fox Avenue location to 
the Minyard Food Store location, and Crull had an architect begin a set of 
drawings for the gym. Later that month, Diana Rhodes, Matt Liebhardt, and Crull 
went to Venice, California for a Gold’s Gym orientation and training session.
        However, 
in February of 1997, the Rhodeses refused to sign the SBA loan for the project, 
and subsequently Lynn Rhodes told Crull that they were pulling out of the 
venture. Crull also testified that in March of 1997 she learned that the 
Rhodeses were not going to participate in the endeavor. Crull testified that she 
was not told to remove her equipment at that time and that she began looking for 
other investors to go forward with the project. She contacted Minyard Food 
Store, the owner of the proposed gym location, and obtained permission to leave 
her equipment there while she determined if she could work out another deal. On 
March 19, 1997, Crull wrote a letter to Minyard Food Store stating that “I am 
currently assisting the owners and investors in the restructing of the company 
after the abrupt withdraw [sic] of the Rhodes,” and also on that date authored 
a “letter of contract agreement” indicating that she and Matt Liebhardt were 
reclaiming stocks previously set aside for Diana Rhodes, such that Crull would 
be an 80% owner and Matt Liebhardt a 20% owner. The document is not signed by 
Matt Liebhardt.
        On 
March 22, 1997, Crull prepared a “letter of proposal” indicating that Diana 
Rhodes had “deceived all parties involved including her family and friends” 
and that “there has never been a question about them [Georgie Rhodes and Diana 
Rhodes]” following through with the original agreement “until a couple weeks 
ago.” She also expressed the concern that Minyard Food Store might seize her 
property located in their building and acknowledged that the proposed project, 
as originally structured, was at an end “since the Rhodes chose to pull 
out.”
        In 
June of 1997, the Rhodeses attorney orally informed Crull that she was to remove 
her furniture, fixtures, and equipment from the Minyard Food Store location 
although, according to Crull, the Minyard Food Store’s representative gave her 
permission to leave the equipment in the Minyard Food Store building until she 
could locate new investors. The equipment remained on site. On July 3, the 
Rhodeses had Crull’s equipment removed without her consent or notice and 
indicated that the equipment would not be returned unless she paid for the 
moving and storage fees and released them from any liability surrounding their 
purported contract. The Rhodeses then sold the equipment and kept the money from 
the sale. This resulted in the original lawsuit by Crull against the Rhodeses 
and ultimately this appeal.
III. Limitations
        In 
her third and fourth issues, Crull posits, “Did Cindy Crull miss the statute 
of limitations on her breach of fiduciary duty claim,” [issue three] or “her 
breach of contract claim” [issue four]? We will address these issues in 
reverse order.
A. Breach of Contract
        Crull 
filed her original petition on May 25, 2001. The four-year statute of 
limitations applies both to a breach of fiduciary duty claim and to a breach of 
contract claim or settlement of partnership accounts. Tex. Civ. Prac. & Rem. Code Ann. § 
16.004(a)(5), (c) (Vernon 2002). Crull argues that her claims, contained in her 
first and second original amended petitions, are not based on the original 
agreement between the parties but rather on an implied contract that arose after 
the original contract was breached and on the duties the Rhodeses allegedly had 
to protect her belongings at the Minyard Food Store location after the breach.
        Neither 
party favors the court with a discussion of the legal requirements of such an 
implied contract. Nevertheless, there are two types of implied contracts, 
implied-in-fact and implied-in-law. An implied-in-fact contract arises when the 
intentions of the parties are not expressed in writing, but an obligation is 
implied from the parties’ acts or conduct. Preston Farm & Ranch Supply, 
Inc. v. Bio-Zyme Enters., 625 S.W.2d 295, 298 (Tex. 1981). An 
implied-in-fact contract must arise from the conduct of the parties 
demonstrating that there was a meeting of the minds on the terms of the 
contract. Williford Energy Co. v. Submergible Cable Servs., Inc., 895 
S.W.2d 379, 384 (Tex. App.—Amarillo 1994, no writ). Contracts implied-in-law, 
also known as quasi- or constructive contracts, are obligations that are created 
by law on the grounds of reason and justice. Ferrous Prods. Co. v. Gulf 
States Trading Co., 323 S.W.2d 292, 295 (Tex. Civ. App.—Houston 1959), aff’d, 
332 S.W.2d 310 (Tex. 1960).
        Under 
the facts of this case, however, Crull received permission from Minyard Food 
Store, not the Rhodeses, to store her equipment in the Minyard Food Store 
building after the Rhodeses backed out of the endeavor. The Rhodeses, however, 
held the lease on the building from Minyard Food Store, and Crull did not 
negotiate with them about keeping her equipment there. Further, she presents no 
evidence that there was any consideration on her part to the Rhodeses for the 
maintenance of her property in their leased premises. Under the facts before us, 
we cannot find any mutual intent to contract after March 1997 or any 
consideration given by Crull to support her alleged implied contract, whether it 
be implied-in-fact or implied-in-law.
        The 
factual allegations contained in Plaintiff’s Second Amended Original Petition, 
following the Rhodeses’ backing out of their venture, are as follows:
   
19.   By the time the Rhodes backed out of the deal, 
Cindy Crull had a strong reliance interest in it insofar as she had already shut 
down her existing business and move [sic] all of her equipment into the Minyards.
 
20.   
Cindy Crull began looking for other investors to go forward with the project. 
She also contacted Minyards and obtained permission to leave her equipment in 
the Minyards store while she was trying to put another deal together.
 
21.   
In or about June 1997, the Rhodes verbally demanded that Cindy remove the 
furniture, fixtures and equipment Crull had previously delivered to the Minyards 
location but did not offer to help pay for the move or pay for storing the 
equipment until Cindy could put together another gym.
 
22.   
On or about July 3, 1997, the Rhodes removed Crull’s equipment from the 
Minyards without her consent.  Crull made repeated demands upon the Rhodes 
for return of the equipment but they refused to return it unless Crull paid for 
the moving and storage.  The Rhodes then sold the equipment and kept the 
money.  To date the Rhodes have refused to pay Crull for the equipment.
 
With 
regard to Crull’s cause of action for breach of contract based on these facts, 
her pleadings state as follows:
  
By their conduct . . . defendants Diana Rhodes, Georgia Rhodes, and Lynn Rhodes 
made representations and promises and took actions that created a contract with 
Cindy Crull that was either express or implied in fact or in law.  
Plaintiff, Cindy Crull, relied on the representations and promises of the 
Defendants and delivered valuable consideration to the enterprise envisioned 
by the discussions and agreements of the parties.  In so doing she 
satisfied all conditions precedent to the formation of a contract with Diana 
Rhodes, Georgia Rhodes, and Lynn Rhodes.  Defendants’ breach of 
contract caused the new business to fail and caused Crull to lose the value 
of her investment in it. [Emphasis supplied.]
 
It 
is readily apparent from the factual assertions and the pleadings that the 
contract envisioned under the scenario is the original alleged contract to 
establish a Gold’s Gym.  It is not concerning some implied contract that 
arose after the alleged breach of this contract.  Hence, there is no 
pleading to support the contract on which she now sues.  For the forgoing 
reasons, we find that the statute of limitations had run on any contract 
regarding establishing a Gold’s Gym by the time of the filing of Crull’s 
original petition in May 2001, and no subsequent contract existed, nor was a 
subsequent contract pled.  See Tex. Civ. Prac. & Rem. Code Ann. § 
16.004(c).
B. Breach of Fiduciary Duty
        If 
a fiduciary duty arose, it did so due to the “temporary agreement of 
partnership” signed in January 1997.  However, by Crull’s own admission 
in her letter of March 27, 1997, that partnership had ended in March of 
1997.  There is no evidence before this court that any further fiduciary 
relationship was established between the parties, particularly under these 
circumstances where the lease of the Minyard Food Store premises was not in 
Crull’s name and her permission to be on the premises was sought from Minyard 
Food Store and not from the lessee, the Rhodeses.  Therefore, we likewise 
find that by the time Crull’s original petition was filed in May 2001, the 
statute of limitations had run on her breach of fiduciary duty claim. See 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 16.004(a)(5).  We overrule Crull’s third and fourth points.[3]
IV. Conclusion
        Having 
overruled Crull’s third and fourth points, we affirm the judgment of the trial 
court.
  
                                                                  BOB 
MCCOY
                                                                  JUSTICE
  
  
  
PANEL B:   DAUPHINOT, 
WALKER, and MCCOY, JJ.
 
DELIVERED: March 31, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The evidence is in dispute as to who initiated the discussions concerning the 
Gold’s Gym, who was to participate (i.e., to what extent and in what 
capacity), and who would own and operate the proposed business.
3.  
Because we overrule Crull’s third and fourth points, it is unnecessary for us 
to reach her other points.  See Tex. 
R. App. P. 47.1 (stating that appellate court must address every issue 
necessary for final disposition of the appeal).