**BOWERS v. MISSOURI, K. & T. RY. CO. OF TEXAS.   (No. 2545.)**

(Court of Civil Appeals of Texas. Texarkana. April 27, 1922. Rehearing Denied May 4, 1922.)

1. **Payment** ⊂⊃87(1)—**Money paid under duress may be recovered.**

Money paid under duress or unlawful compulsion may be recovered.

2. **Carriers** ⊂⊃200—**Shipper paying excessive charges under protest to obtain goods can recover excess.**

A shipper of goods, who pays excessive charges or charges greater than the law fixes and allows to a carrier, under protest to obtain possession, is considered as having made the payment under duress and may recover excess.

3. **Bailment** ⊂⊃23—**Bailee liable for conversion in refusing to deliver possession unless justified.**

A bailee is liable for conversion when he withholds and refuses to deliver possession of the goods upon proper and seasonable demand therefor by the owner or his agent, unless the bailee is justified in so doing by law or contract.

4. **Carriers** ⊂⊃200—**Shipper paying excess charge under compulsion may recover it.**

Where there was no published tariff schedule for cotton pickings between two interstate points and the carrier's agent contracted to carry the shipment at 65 cents per hundred pounds, but on arrival of the goods at destination the connecting carrier refused to deliver the goods unless a rate of $1.10 was paid, and the shipper to get possession paid the excess, as the excess was not a lawful rate, the exaction as a condition to delivery was wrongful and not warranted by law, and the carrier and its connecting carriers could not lawfully receive and hold the excess as transportation charges, and the shipper, having paid the ex-

cess under duress or compulsion was entitled to recover it back.

*On Motion for Rehearing.*

5. **Payment** ⊂⊃89(4)—**Petition held to state an action for money received.**

Where the allegations of a petition were to the effect that carrier had contracted to accept an interstate shipment for a rate of 65 cents per 100 pounds and that the shipper had been compelled over his protest to pay to the delivering carrier the rate of $1.10 to secure possession, which was an excess of 45 cents over the rate contracted for, and the sole claim was for the excessive charges above the contract rate, the allegations amount to a declaration for money had and received and not rightfully retained in furtherance of the contract of shipment.

6. **Payment** ⊂⊃89(1)—**If facts show money paid under duress, action for money received sustained.**

If the facts show that money had been paid under duress or compulsion or has been received by one without authority of law and in opposition to the right of the other contracting party, which in equity ought to be refunded or paid back, an action for money had and received can be sustained.

Appeal from Cooke County Court; H. S. Holman, Judge.

Action by Lloyd Bowers, Jr., against the Missouri, Kansas & Texas Railway Company of Texas. From judgment for defendant, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

The suit is by appellant, as the shipper of an interstate shipment, to recover freight charges paid under protest in excess of the charges specified in the contract of shipment in order to get possession of the freight. The defense is that the contract of shipment was contrary to law and void because the rate of shipment on the kind of freight had not at that time been filed with, fixed, and approved by the Interstate Commerce Commission. The trial court concluded, as a matter of law, upon the agreed facts in the case, that, as the contract of shipment was void and unenforceable because in violation of and prohibited by the Interstate Commerce Act (U. S. Comp. St. § 8563 et seq.), the plaintiff could not recover. The facts were agreed to by the parties to the suit, and are without conflict. It appears that the appellant applied to the appellee's local agent in Greenville, Tex., to ascertain the through freight rate from Greenville, Tex., to Charlotte, N. C., on "loose cotton pickings in sacks." The local agent of the appellee informed the plaintiff that there was no interstate through freight rate or combination of local rates fixed, scheduled, or filed with the Interstate Commerce Commission by the appellee, or its connecting carriers, covering

"loose cotton pickings in sacks" by that name or as a distinct commodity. Then the appellee's local agent informed appellant that the appellee railway company would receive the cotton pickings for through shipment over its own and connecting lines from Greenville, Tex., to Charlotte, N. C., at a through freight rate of 65 cents per 100 pounds, and then and there agreed to receive the shipment on the rate. Appellant thereupon loaded at Greenville, Tex., 87,797 pounds of loose cotton pickings in sacks in three cars of appellee for transportation under said rate of 65 cents per 100 pounds to Charlotte, N. C., and the appellee's local agent issued to appellant a through bill of lading therefor based on said rate. Appellant contracted a sale of the cotton pickings in virtue of the freight rate of 65 cents per 100 pounds, to the Charlotte Bagging Company, the consignee, of Charlotte, N. C., at a certain price f. o. b. the cars at Charlotte, N. C.; the plaintiff to pay the through freight on the shipment. The shipment was routed and carried from Greenville, Tex., to Charlotte, N. C., via appellee's line and its connecting lines the Missouri, Kansas & Texas Railway Company of Texas, the Missouri, Kansas & Texas Railway, the Chicago, Rock Island & Pacific Railway, and the Southern Railway.

"It is agreed," according to the record, "that when said shipment of cotton pickings reached Charlotte, N. C., the delivering line, the Southern Railway Company, refused to deliver said shipment of cotton pickings to plaintiff's consignee, the Charlotte Bagging Company, unless said consignee would pay freight on said shipment from Greenville, Tex., to Charlotte, N. C., at the rate of $1.10 per 100 pounds; that said consignee, for plaintiff, under protest paid said freight at the rate of $1.10 per 100 pounds through from Greenville, Tex., to Charlotte, N. C., in order to get possession of said pickings, and the freight was then delivered to said consignee."

It is shown that the rate of $1.10 per 100 pounds was not a through, joint, or local rate in force by any of the connecting carriers, or filed with and approved by the Interstate Commerce Commission. It further appears, according to the record:

"It is agreed that at the time this shipment was contracted for and made there was no interstate through rate of freight, or any combination of local rates, fixed, posted, scheduled or filed by the defendant or either of its connecting carriers with the Interstate Commerce Commission relating to or covering the freight rate on loose cotton pickings in sacks, or on cotton pickings from compress platforms put in sacks, and that there was no schedule of any rate covering such shipment on file or posted in defendant's depot at Greenville from Greenville, Tex., to Charlotte, N. C."

Further:

"It is agreed that it was not usual or customary for loose cotton pickings in sacks, gathered from cotton compress platforms, to be offered the defendant or other carriers for transportation, and for that reason no interstate rate for such transportation had ever been fixed, scheduled, or filed with the Interstate Commerce Commission, or any such rate published or posted; that the shipment was the first of its kind that had ever been offered to defendant for transportation from Greenville, Tex., to Charlotte, N. C."

J. T. Adams, of Gainesville, for appellant.
Garnett & Garnett, of Gainesville, for appellee.

LEVY, J. (after stating the facts as above). The question on appeal is that of whether or not the trial court correctly concluded that the legal effect attaching to the facts is to deny the appellant any right of recovery upon the ground, as concluded by the court, that—

"Under the Interstate Commerce Act, it is made unlawful to transport property in the absence of an existing and effective schedule showing rates filed with and approved by the Interstate Commerce Commission, and therefore the alleged contract of shipment was illegal and void, because prohibited by said Interstate Commerce Act. Under the decisions of both federal and state courts, neither party to a contract made in violation of law can recover for its breach, but will be left by the law where it finds him. Judgment is rendered for defendant."

The sole defense by the appellee is that the contract of through shipment on the through rate made by it is void and unenforceable because prohibited by the Interstate Commerce Act. The agreed facts are without dispute and are not conflicting. The trial court's ruling, in accordance with the defense made, is predicated upon the theory that the appellant's cause of action is upon the contract of shipment itself. In fact, the appellant does not claim in the pleading and evidence that the appellee did not perform, but breached, the contract of through shipment of the freight delivered into its possession. The freight, as shown, and claimed by appellant, was safely transported, as undertaken to be done, to the routed point of destination and place of ultimate delivery, and there delivered to the consignee designated by appellant. The appellant's suit, according to his petition, is not upon the contract, but, in legal view, is in the nature of an action for money had and received and not rightfully retained by appellee. The sole foundation of the suit is a claim for excessive charges which appellant was required to pay in order to get possession of his goods; that the money was paid under duress or unlawful compulsion.

[1, 2] It is a well-settled rule of law that money paid under duress or unlawful compulsion may be recovered. Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23

Am. St. Rep. 363. A shipper of goods who pays excessive charges, or charges greater than the law fixes and allows to a common carrier, under protest in order to obtain possession of them, is legally considered as having made the payment under duress and may recover it. 2 Elliott on Contracts, §§ 1384-5; 4 R. C. L. p. 862. Nor is such character of suit, if authorized by the facts, in contravention of the federal act. It affirmatively appears that appellee received the freight for transportation through to Charlotte, N. C., at the agreed rate of 65 cents per 100 pounds, and that at such delivery point the connecting carrier, acting in behalf and as agent of appellee, held the appellant's goods and refused to deliver them to his authorized consignee without the payment, as a condition for surrendering the possession of them, of $1.10 per 100 pounds as a "through rate from Greenville, Tex., to Charlotte, N. C." The consignee, for appellant, protested the payment of such sum exacted, but was required to pay it in order to get possession of the goods. It is the excess only, between 65 cents and $1.10 per hundred pounds, that is in suit. If the connecting carrier had exacted and required payment of the $1.10 per 100 pounds because it was the lawfully existing rate applicable to such shipment, then clearly it was justified in so doing, and appellant would not be legally authorized to maintain his suit therefor. The railway company would, in such facts, be legally authorized to demand and receive such payment of lawfully established and existing freight rates. But in the facts here it affirmatively appears that the rate of $1.10 per 100 pounds had not been filed and approved by the Interstate Commerce Commission, as required by the federal act, as a through rate, nor a joint rate, nor a local rate on such freight, eo nomine, or as a distinct commodity, by appellee or any of the connecting lines. In this state of facts, there clearly appears no legally established and effective through rate, nor joint rate, nor local nor combination of local rates that would control the shipment. Having received the goods into its possession, the appellee was bound to deliver them to the shipper or his authorized consignee upon proper demand therefor. The appellee could not legally withhold possession on proper and seasonable demand therefor without some legal justification therefor.

[3] A bailee is liable for conversion when he withholds and refuses to deliver possession of the goods upon proper and seasonable demand therefor by the owner or his authorized agent, unless such bailee is justified in so doing by law or by terms of contract. The appellee and its connecting lines would be required to deliver back the possession of the goods to the shipper or his authorized consignee, even though and notwithstanding the agreement of through shipment was made unenforceable by the prohibition of the federal act against through transportation of freight in the absence of proper rates filed and approved by the Interstate Commerce Act. The illegality of the original agreement by which the possession of the goods was received for transportation would afford no legal justification to the appellee or its connecting lines in withholding possession of the goods upon the proper and seasonable demand therefor by appellant or his consignee until other charges were paid. If the shipping contract was, as it is, unenforceable because of the prohibition of the terms of the federal act, then equally so, and upon the same grounds, was any right to exact and demand the excess charges in this case. For neither the agreed rate of 65 cents nor the demanded rate of $1.10 per 100 pounds was a rate filed with and approved by the Interstate Commerce Commission, as required by the federal act to be done to be a lawful rate authorized to be charged and collected. In the facts appellee and its connecting lines would simply be without any legal remedy for freight charges.

[4] As the excess charge exacted and received of appellant was not a lawful rate, then the exaction of the same from him, as a condition to delivery of the goods, was wrongful and not warranted by law; and the appellee and its connecting carriers could not, in the facts here, lawfully receive and hold the same as transportation charges of the freight. The appellant, having paid the excess charges under duress or compulsion, is entitled to recover back such excess charges. To allow appellant the remedy of recovery of the excess charges only is not enforcing the original contract of shipment, but is leaving the parties just as they were respecting such shipment.

The judgment is reversed, and judgment is here rendered in favor of appellant for the excess charges sued for, with interest and all costs of the trial court and of appeal.

### On Motion for a Rehearing.

[5] The appellee insists that appellants' petition alleged strictly "a contract with appellee and its breach" and is not subject to the construction that it is "an action in the nature of one for money had and received." The petition sets out the facts from which the cause of action arises, and specially states:

"That by reason of the facts above alleged the plaintiff has been damaged in the sum of $395, with legal interest thereon from April 7, 1914, for all of which the defendant became legally bound to pay him. Wherefore plaintiff prays for process, and on final hearing that he recover of defendant his damages, interest, and costs of suit, and all other relief, general and special, as the law and facts may warrant."

The entire allegations are to the effect that defendant had expressly contracted to ship the goods through to Charlotte, N. C., for a freight rate of 65 cents per 100 pounds, and that plaintiff had been "compelled over his protest to pay to the delivering carrier the rate of $1.10 per 100 pounds in order to secure possession of the same (the goods), which was an excess of 45 cents per 100 pounds over and above the rate contracted for and provided for in the bill of lading." The sole claim is for the item of excessive charges of $395.90 above the contract rate and which appellant was compelled to pay in order to get possession of his goods. The allegations amount to a declaration, in legal view, for money had and received, and not rightfully retained in furtherance of the contract of shipment.

[6] It is a well-settled principle of law that if it appears from the facts set out, or from apt averments made in the petition, that money had been paid under duress or compulsion, or has been received by one without authority of law and in opposition to the right of the other contracting party, and which in equity ought to be refunded or paid back, that an action for money had and received can be sustained. And the agreed statement of facts, made under article 1949, R. S., supports the judgment in favor of appellant for the excessive sum of money paid to recover possession of his goods. The facts, in the absence of evidence to the contrary, show in legal effect that the terminal carrier was acting in behalf of appellee in collecting and demanding an excessive charge not authorized by law so far as the record appears. The terminal carrier demanded and received the excess charge above the contract, not as local charges for it, but as charges "from Greenville, Tex., to Charlotte, N. C." The appellant's assignment is to the effect that the court erred in concluding as a matter of law that appellant was not entitled, under the facts, to recover. Such general assignment authorizes and requires this court to review the agreed facts and declare the law attaching to the same.

The motion for rehearing is overruled.