FERROUS PRODUCTS COMPANY, INCORPORATED V.
GULF STATES TRADING COMPANY, INCORPORATED.

No. A-7374. Decided February 17, 1960.
(332 S.W. 2d Series 310)

*Boone & Kraft* and *James C. Boone,* of Houston, for petitioner.

*Witts, Geary, Hamilton & Brice* and *Williams C. Coons,* of Dallas for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Respondent, hereinafter called Gulf, filed this suit against petitioner, hereinafter called Ferrous, for the recovery of the value of a shipment of steel beams which Gulf had made to Metallic Building Company, but which shipment Gulf alleged Ferrous had appropriated to its own use and benefit.

The facts are summarized as follows:

On or about May 12, 1955, a man named Borden of Houston, Texas, telephoned Mr. Chenowith, who was employed by Gulf in Dallas, Texas, and asked if Gulf would be interested in selling the beams to Metallic Building Company. Chenowith answered that it would, and on the same day directed T. E. Mercer Truck Company to deliver the beams from Gulf's Houston yards to Metallic Building Company, 4601 Holmes Road, Houston. Mercer issued its bill of lading. The bill of lading dated May 12, 1955, showed the consignor to be Gulf and Metallic Building Company was shown to be the consignee. When the beams were delivered on May 12, 1955 to the address shown, an employee at the ware-

house called Mr. Thielemann, vice president and general manager for Ferrous, about the shipment. Mr. Thielemann told him the shipment was for Ferrous. An authorized representative of Ferrous scratched out the name of Metallic Building Company and inserted the name of Ferrous and took delivery of the beams for Ferrous. All of this was unknown to Gulf. Mr. Thielemann explained that on May 10 Ferrous told Borden it would take some beams like those delivered and that at the same time it issued its purchase order to Borden; that when the shipment arrived the receiving clerk had no information about the shipment to Metallic Building Company, but did have a copy of the purchase order issued to Borden by Ferrous. The shipping clerk then telephoned Mr. Thielemann.

On May 16 Gulf sent its invoice to Metallic Building Company. On May 18 Ferrous wrote Gulf that Metallic Building Company had received the invoice, but that Metallic had not ordered the material but Ferrous had, although the order was direct to Borden. Ferrous returned the invoice and sent Gulf a copy of its purchase order to Borden and a copy of the invoice from Mercer for trucking the materials. Ferrous paid the trucking charges.

On May 24 Gulf acknowledged the letter of May 18 and stated that Borden had arranged for the shipment of the beams, but advised them to make out the invoice to Metallic Building Company. It is to be noted, however, that Mr. Chenowith testified that Gulf sold to Metallic and never knew Ferrous was involved with the beams until receipt of the letter of May 18. This date was after Ferrous had taken the beams and sold them on the same day they were received on their own account to a third person.

Since Borden was indebted to Ferrous, Ferrous gave him credit on his account for the value of the beams.

Gulf sued Ferrous for the value of the shipment of the steel beams. Judgment was rendered for Gulf for $1,892.80, together with attorneys' fees of $500.00. Recovery was allowed by the trial court on the theory of an implied contract since Ferrous had received and disposed of the beams. The findings of fact filed by the trial court were in substance the facts as related and the court found that by changing the bill of lading, taking the goods and appropriating them to its use and benefit, Ferrous agreed to pay the reasonable cash market value of the goods.

Ferrous appealed to the Court of Civil Appeals and that court affirmed the judgment of the trial court. 323 S.W. 2d 292.

1 When Ferrous changed the bill of lading issued to Metallic Building Company without knowledge or consent of Gulf by substituting its own name as consignee, and having received the beams and sold them and appropriated the proceeds thereof, Ferrous became liable to Gulf for the market value of the beams. The liability arises under what the law has come to denominate a quasi contract. Mr. Corbin, On Contracts, says:

"A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. If this is true, it would be better not to use the word 'contract' at all. Contracts are formed by expressions of assent; quasi contracts quite otherwise. The legal relations between contractors are dependent upon the interpretation of their expressions of assent; in quasi contract the relations of the parties are not dependent on such interpretation." (Vol. 1, Ch. 1, Sec. 19, p. 38).

And further:

"Why should such cases as these be classified as contracts at all, even with such qualifying modifiers as 'quasi' or 'implied in law'? The chief reason that they came to be so classified, both in Roman law and in the English common law, is that no other suitable and really descriptive classification was available and it was desired to make use of the remedial forms of action by which contracts were enforced * * *. So, under the head of quasi contract are included numerous odds and ends of obligation, without other pigeon holes in which to place them, even though they have little in common with consensual agreement and may have great differences among themselves." (Id., pp. 40-41).

. In 17 C.J.S. 322-324, Contracts, Sec. 6, we find quasi contracts defined as follows:

"Contracts implied in law, or * * * more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agree-

ment; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. Such contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do * * *."

In discussing the examples of quasi contracts, the same text at page 325 states, "among the instances of quasi or constructive contracts are those * * * cases where a person by wrongfully appropriating property to his own use becomes liable to pay the owners the reasonable value thereof * * *." See also 21 Yale L.J. 533, 537, et seq. and (a case not in point, but which discusses the quasi contract) Miller v. Miller, Texas Civ. App., 1927, 292 S.W. 917.

The example cited above fits our case exactly, and we hold that it fixes the liability of Ferrous to Gulf for the market value of the beams and the trial court correctly rendered judgment for Gulf against Ferrous for $1,892.80.

Ferrous complains of that part of the judgment awarding to Gulf $500.00 as attorney fees. The only question before us is whether or not this case comes within the provisions of Art. 2226, V.A.C.S., in which event attorney's fees may be recovered. The necessary preliminaries as to notice, time, proof of amount, etc. are all present. As relevant and material, Art. 2226 reads in part as follows: "Any person having a valid claim against a person or corporation for * * * material furnished * * * * or suits founded upon a sworn account or accounts * * * may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

Websters Unabridged Dictionary, 1934, defines "material" as being "the substance or substances, or the part, goods, stock or the like of which anything is composed or may be made; as raw material." Davenport v. Harry Payne Motors, Inc., Texas Civ. App., 1953, 256 S.W. 2d 245, no writ history.

2 We hold that the steel beams which were received and appropriated are "material furnished" within the meaning of Art. 2226. We have also held that this suit by Gulf for the value of steel beams is upon "a valid claim" against Ferrous, and Gulf having furnished Ferrous "material" which is not paid for and

proper demand having been made by Gulf of Ferrous to pay for the beams, "a valid claim" arose in favor of Gulf against Ferrous and Gulf is entitled to recover the attorney's fee.

The judgment of the Court of Civil Appeals affirming the trial court is affirmed.

Opinion delivered February 17, 1960.