**N. L. BARRETT, Appellant,**

v.

**Maggie R. FERRELL, Appellee.**

**No. 996.**

Court of Civil Appeals of Texas, Tyler.

April 14, 1977.

Rehearing Denied May 12, 1977.

L. F. Burke, Longview, for appellant.

Kenneth L. Ross, Sharp, Ward & Ross, Longview, for appellee.

MOORE, Justice.

Appellee, Maggie R. Ferrell, brought suit against appellant, N. L. Barrett, for damages for breach of a contract. As grounds for a cause of action appellee alleged that on March 7, 1975, she entered into an agreement with appellant whereby he assigned her an undivided ¼th of the ⅞th oil, gas and mineral interest which he owned in 84.1 acres of land situated in Upshur County, Texas, for and in consideration of the sum of $20,000.00. Simultaneously therewith, appellant and appellee entered into a typewritten letter agreement, signed by both parties, agreeing that the $20,000.00 consideration which appellee paid for the interest in the leasehold would include her cost of drilling and completing the first well on the leasehold premises. She further alleged that although appellant drilled the well, he thereafter plugged and abandoned it as a dry hole, thereby breaching his contract to complete the well and damaging her in the amount of $12,500.00. In the alternative, appellee alleged that since the well was not completed as a producing well and appellant did not install the completion equipment which he would have been required to install had it been a producing well, appellant was unjustly enriched in the amount of $12,500.00 and therefore she was entitled to restitution of such amount. By way of a trial amendment, appellee alleged that as a result of her agreement with appellant a mining partnership was created of which she prayed for an accounting and for a recovery of the sum of $12,500.00. Appellant answered with a general denial and specially denied, under oath, the existence of a mining partnership. After a trial before the court sitting without a jury, judgment was rendered in favor of the appellee for the sum of $12,500.00. From such judgment appellant Barrett has perfected this appeal.

We reverse and render.

At the request of appellant, the trial court filed extensive findings of fact and conclusions of law, the substance of which is as follows: (1) On March 7, 1975, Mag-

gie R. Ferrell and N. L. Barrett executed the following letter agreement:

"Dear Mrs. Ferrell:

"I am this day assigning to you an undivided ¼th of the ⅞ths oil, gas and mineral leasehold covering 84.1 acres situated in Upshur County, Texas.

"The consideration you have paid me for said ¼th interest will include your cost of drilling and completing the first well on said leasehold.

"As to all future drilling and operating expenses, you will pay your proportionate ¼th part.

Yours very truly,
/s/ N. L. Barrett
N. L. Barrett

ACCEPTED:
/s/ Maggie R. Ferrell
Mrs. Maggie R. Ferrell"

(2) Mrs. Ferrell paid Barrett the sum of $20,000.00; (3) the well which was drilled under the letter agreement was a dry hole; (4) Barrett plugged and abandoned the well; (5) Barrett did not "complete" the well as that term is used in the industry; (6) the parties intended by the term "cost of drilling and completing the first well", as used in the letter agreement, to include all casing, tubing, rods, well connections, tanks, separators and pumping unit and other completion equipment; (7) such completion equipment was never installed; (8) the reasonable cost of installing the completion equipment would have been $80,000.00; (9) the cost of drilling and plugging the well as a dry hole was $29,324.00; (10) Mrs. Ferrell's ¼th interest and payment of $20,000.00 was based on ¼th of the cost of drilling and the cost of completing the well; (11) the sum of $7,331.00 represents Mrs. Ferrell's ¼th cost of drilling and plugging the well; (12) the sum of $12,500.00 represents the amount of money advanced by Mrs. Ferrell for completion cost of the well; (13) N. L. Barrett has not expended the $12,500.00 paid him by Mrs. Ferrell to furnish completion equipment and services on the well; (14) Mrs. Ferrell and Barrett were joint owners of the lease, and (15) joint operators of the lease, and (16) agreed to share the profits from the lease, and (17) had a community of interest in the lease, and (18) also had a mutual agency in representing the mining partnership existing between them; (19) there was no agreement limiting the rights of Mrs. Ferrell in regard to the lease; (20) Barrett has never returned any money to Mrs. Ferrell; and (21) she received no consideration from him other than the ¼th share of the $29,324.00 cost spent on the well; and (22) by virtue of Barrett's failure to "complete" the well as called for in the letter agreement, he was unjustly enriched by the sum of $12,500.00. The trial court concluded as a matter of law that (1) the letter agreement was a binding contract between the parties; (2) there was a breach of the letter agreement, and as a result Mrs. Ferrell suffered damages in the amount of $12,500.00 representing that sum of money for which Barrett delivered no consideration; (3) the parties entered into a mining partnership; and (4) upon an accounting of the mining partnership, Mrs. Ferrell was entitled to $12,500.00 which sum represents the advanced but unused portion of the original consideration for the ¼th cost of drilling and completing the well.

The evidence shows that prior to the time Barrett conveyed the ¼th interest in the lease to Mrs. Ferrell, he had purchased the 84.1 acre lease from the Gillespie Estate on a standard oil and gas mineral lease, paying a bonus therefor and agreeing, at his option, to drill a well or to pay yearly rentals, or to suffer a forfeiture of the lease. Upon learning that Barrett was going to drill the well, Mrs. Ferrell contacted him and requested him to sell her an interest in the lease. Barrett agreed to assign her an undivided ¼th interest out of his ⅞ths working interest for the sum of $20,000.00. It was stipulated by the parties at the time of trial that neither the oil and gas lease, the assignment to Mrs. Ferrell, nor the letter agreement in question required Barrett to drill a well to any specified depth, or any specified horizon, or to guarantee the production of oil or gas. It is undisputed that Barrett drilled the well 120 feet deeper than any other well in the area had been

drilled and below the depth where oil and gas were usually found in the area. The evidence shows that Barrett abandoned the well as a dry hole upon the advice of an expert who advised him that the well would not produce oil or gas. Mrs. Ferrell does not contend that there was any fraud on the part of Barrett nor does she contend that Barrett acted in bad faith in plugging and abandoning the well as a dry hole, nor does she contend that Barrett was negligent or that he failed to use his best efforts to bring the well in as a producing well. Nowhere in her pleadings does Mrs. Ferrell allege that the letter agreement was ambiguous or that it failed to reflect the complete agreement between the parties. Upon the trial Mrs. Ferrell gave the following testimony in response to a question propounded by counsel for Barrett: "Q. And this letter and this agreement was the agreement you and Mr. Barrett had? A. Yes. That was all."

During the trial appellee took the position that although the well was a dry hole appellant had not completed the well. She contended that the term "completing" the well, as used in the letter agreement, was a technical term peculiarly applicable to the oil and gas industry and offered expert testimony to explain the meaning of the term "completing" as used in the oil and gas industry. Appellant objected to such testimony on the ground that in the absence of any pleadings of fraud, accident or mistake, parol evidence was inadmissible to vary the terms of the written instrument. The objection was overruled and the expert witness was permitted to testify. While he gave no testimony of the usual understanding of the term "completing" a well by the oil and gas industry, he testified that "Completing the well would be through the equipping and putting it to production." He further testified that a prudent operator would not complete a dry hole, meaning that a prudent operator would not install completion equipment on a dry hole.

■ By appellant's first group of points of error, he contends that the judgment should be reversed and rendered in his fa-vor because the undisputed facts disclosed by the evidence show that he was in no way liable to appellee under a proper interpretation of the contractual relationship existing between the parties. In reply, appellee maintains that the trial court properly construed the contract and that the court's finding that appellant breached his obligation to complete the well should be sustained. As we understand her contention, she takes the position that the $20,000.00 consideration paid by her was for her ¼th cost of (1) the drilling of the well, and (2) the completion of the well. While she makes no contention that appellant was obligated to complete the well as a producing well, she contends that in order for the appellant to fulfill his obligation to complete the well, he was obligated to install completion equipment on the well such as the casing, separator, pump, et cetera. She, therefore, argues that since the undisputed evidence shows that no completion equipment was installed by appellant, the well was never completed and consequently appellant must be held to have breached his obligation to complete the well. Although the trial court seems to have concurred with her contention, we do not believe the agreement is subject to such an interpretation.

The agreement between the parties was that Barrett would sell appellee an undivided ¼th of his ⅞ths working interest in the 84.1 acre lease. The agreement recites that the consideration paid by her was for ¼th of his leasehold interest and was to include her cost of drilling and completing the first well on the leased premises. Contrary to appellee's contention, the $20,000.00 consideration was not paid to appellant solely for the purpose of defraying appellee's cost of drilling and completing the well. According to the terms of the agreement, the purchase price of the lease included the cost of the drilling and completing the well without additional cost to the appellee, irrespective of what it may have cost appellant to drill and complete the well. There is nothing in the letter agreement indicating that the parties intended to share in the cost of the drilling and completing of the well on a ¼th and ¾ths basis, nor is there

anything to show what part of the consideration was paid for the lease or what part was paid for the drilling and completing of the well.

Appellee makes no contention that the agreement was ambiguous or did not represent the true intentions of the parties. She testified that the letter and the assignment constituted the entire agreement between them. As we interpret the letter agreement, appellant's sole and only obligation to appellee was to drill and complete a well on the leased premises without additional cost to her. It is without dispute that appellant drilled the well and made a good-faith effort to produce oil or gas therefrom.

■ An obligation to "complete" the well does not constitute an obligation to complete it as a producing well. As stated in Summers, The Law of Oil and Gas, Sec. 687 (Perm.Ed.1938): "Compensation for drilling an oil or gas well may be made contingent upon the discovery of oil or gas in paying quantities, but a contract will not be so construed in the absence of a clear expression or implication of such intent by the contract." In the absence of a definition of the term "completing" the well by the parties, the law supplies a definition for the term. The courts in construing contracts for the drilling of wells are not disposed to imply warranties as to production. The presence of the substance sought to be obtained by the drilling is a matter not within the driller's power to control and unless the contract, by express terms or clear implication, makes payment of his compensation dependent upon securing production, the driller will be held to have completed the well when he has drilled the well to the depth necessary to find oil or gas in paying quantities, or to such a depth as in the absence of such oil or gas would reasonably preclude the probability of finding oil or gas at a further depth. Obviously, a well need not be a producing well to be completed. *Cannon v. Wingard*, 355 S.W.2d 776, 780 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.); *Chapman v. Ellis*, 254 S.W. 615, 616 (Tex.Civ.App.—Beaumont 1923, writ dism'd); *Frost v. Martin*, 203 S.W. 72, 74 (Tex.Civ.App.—Fort Worth 1918, no writ); Summers, The Law of Oil and Gas, sec. 350 (Perm.Ed.1938); Thuss on Texas Oil and Gas, 2nd ed., sec. 32, p. 49.

Appellee's contention that the term "completing" a well means that no well is ever completed until completion equipment is installed is untenable. Contrary to appellee's contention, her expert testimony offered for the purpose of explaining the meaning of "completing" the well does not sustain her argument. The expert witness testified that a well is considered to be completed when completion equipment is installed so as to bring the well into production. This testimony of the witness clearly assumes that the well is capable of producing oil and gas because he further testified that a prudent operator would never install completion equipment on a dry hole. Thus the term "completing" a well as used in the oil and gas industry does not mean that the operator is required to install completion equipment on a dry hole.

It is a well recognized canon of construction that technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless there is evidence that the words were used in a different sense. The evidence shows that both parties were experienced in the oil and gas business. The meaning of the term "completing" the well can be assumed to have been in the minds of the parties when the contract was made and, hence, they must be held to have contracted with such meaning in mind. Since the well was a dry hole it did not require the installation of completion equipment because to do so would have amounted to nothing more than a useless waste of time and money. Certainly the parties did not contemplate the law to obligate the appellant to undergo useless expense and effort. Under the record before us, we hold that the appellant performed his obligation by "completing" the well in question as a dry hole. It follows that the appellee is not entitled to damages for a breach of the contract.

■ Likewise we do not believe that the judgment may be sustained on the basis of appellee's alternative plea of restitution for unjust enrichment. Under this theory of recovery appellee concedes that appellant had no obligation to install completion equipment on a dry hole. Here again, appellee takes the position that .the entire $20,000.00 consideration that she paid to appellant was for her ¼th cost of the drilling and completing of the well. She argues that her drilling cost amounted to ¼th of $29,324.00, or the sum of $7,331.00. Based on this premise, she argues that in view of the evidence showing that the installation of completion equipment necessary to complete the well would have cost $50,000.00, her ¼th cost of the completion expense would have amounted to $12,500.00. Consequently, she maintains that since appellant was not obligated to expend funds to install completion equipment upon a dry hole, he "pocketed" the $12,500.00 which she had advanced as her ¼th cost of completing the well and was unjustly enriched to that extent. We are not in accord with this proposition.

■ An action for restitution based on unjust enrichment or for money had and received will lie where one person has obtained money from another by fraud, duress or taking an undue advantage; or when money is paid by one person in consideration of an act to be done by another and the act is not performed; or to recover money received on a consideration that has failed in whole or in part. 6 Tex.Jur.2d Assumpsit sec. 6, p. 551 (1959). The doctrine of unjust enrichment or recovery in quasi contract applies to situations where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the same to the person to whom in good conscience it ought to belong. 66 Am.Jur.2d, Restitution and Implied Contracts, sec. 11, p. 952 (1973). It is fundamental that for a person to be entitled to restitution, he must show not only that there was unjust enrichment, but also that the person sought to be charged had wrongfully secured a benefit or had passively received one which it would be unconscionable for him to retain. 66 Am. Jur.2d Restitution and Implied Contracts, sec. 4, p. 947 (1973).

Appellee's contention that appellant was unjustly enriched is based on the false assumption that the $20,000.00 consideration which she paid to appellant was solely for her share of the cost of drilling and completing the well. The letter agreement clearly recites that the $20,000.00 consideration was paid by her for ¼th of the working interest in the lease which would include appellee's cost of drilling and completing the well. As above stated, the evidence conclusively shows that appellant completed the well as a dry hole and fulfilled the terms of the contract. There is nothing in the evidence to suggest that appellant obtained the funds wrongfully or that in good conscience and justice he should not be allowed to keep the consideration paid him for the lease and the drilling and completing of the well. Appellee does not aver fraud, accident, mistake, duress or bad faith on the part of appellant. Appellee is in no position to seek restitution on the theory that there was a partial failure of consideration since appellant fulfilled his obligation under the agreement.

■ We have carefully examined the evidence bearing upon the question of whether the parties were engaged in a mining partnership as alleged by appellee. We have concluded that a mining partnership was not shown as a matter of law. There is no evidence in this record showing that the parties agreed to become mining partners. In order to constitute a mining partnership arising by operation of law, there must be not only a joint ownership of mining property (which of itself creates only the relation of co-tenancy), but also a joint operation. The actual working of the mine by the joint owners is essential to a mining partnership. Proof of joint operation is absolutely required before a mining partnership arises. *State v. Harrington*, 407 S.W.2d 467, 477 (Tex.1966) cert. denied 386

U.S. 944, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967); *Gardner v. Wesner*, 55 S.W.2d 1104, 1106 (Tex.Civ.App.—Austin 1932, writ ref'd); 38 Tex.Jur.2d, Mines and Minerals, sec. 29, p. 731 (1962). There is no evidence of probative force in this record that appellee participated in the operation or the drilling of the well. Insofar as the record shows, her only connection with the entire project was that she purchased a ¼th interest in appellant's working interest. It, therefore, follows that the judgment cannot be sustained on the basis that a mining partnership was created by operation of law.

Accordingly, the judgment of the trial court is reversed and judgment is hereby rendered that the appellee, Maggie L. Ferrell, take nothing.