**BURLINGTON NORTHERN RAILROAD COMPANY, Appellant**

v.

**SOUTHWESTERN ELECTRIC POWER COMPANY, Appellee.**

No. 06–95–00024–CV.

Court of Appeals of Texas, Texarkana.

Argued April 23, 1996.

Decided April 30, 1996.

Opinion Overruling Rehearing June 4, 1996.

Rehearing Overruled July 16, 1996.

John R. Mercy, Texarkana, Martin D. Schneiderman, Washington, DC, and Mike A. Hatchell, Tyler, for appellant.

Michael V. Powell, Dallas, David E. Keltner, Fort Worth, G. William Lavender, Texarkana, AR and David R. Taggart, Shreveport, LA, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Burlington Northern Railroad Company (Burlington) appeals a judgment entered in favor of Southwestern Electric Power Company (SWEPCO) following a jury trial. Burlington challenges the trial court's submission of certain jury questions, entry of a declaratory judgment, and award of attorney's fees. SWEPCO raises two conditional cross-points of error challenging certain evidentiary rulings made by the trial court for our consideration only in the event we decide to reverse the judgment. We sustain each of Burlington's points of error, overrule SWEPCO's cross-points, and render judgment that SWEPCO take nothing.

In 1974, Burlington and SWEPCO entered into a long-term contract [1] for the hauling of coal from Wyoming to two SWEPCO power plants in Texas and Arkansas. [2] The contract called for shipments to the Welsh plant to commence on October 1, 1976, and continue for twenty-five years. Shipments to the Flint Creek plant were to commence in 1977, and also continue for twenty-five years.

Initial shipping rates to be charged by the railroads were listed in the contract. In an appendix to the contract, a clause entitled "Escalation Formula" provided that the rates would be adjusted once each year according to the AAR Western Index of Railroad Material Prices, Wage Rates and Supplements Combined, published annually by the Interstate Commerce Commission. Immediately following the escalation formula provision was this clause entitled "Formula Intent":

> It is the intent of [the parties] that the formula described above will compensate [the railroads] for any changes in the cost of transporting SWEPCO's coal tonnages above or below the 1971 base cost level. If any one of the parties should suffer a gross inequity as a result of unusual economic conditions, which result in the formula failing to fairly cover cost changes, such inequities will be resolved by mutual agreement among [the parties]. Pending such agreement, no party shall be relieved of its

---

1. Because the enforceability of a long-term contract between a railroad and one of its customers was unclear under the regulatory system prevailing at the time, the terms of the contract were set out in a letter of understanding signed by each of the parties.

2. The Kansas City Southern Railway Company and the Louisiana and Arkansas Railway Company were also parties to the contract and were original defendants in this suit. Before trial these parties settled with SWEPCO.

obligations as outlined in the effective tariff.

In 1984, the parties entered into a second contract which superseded the original contract as to the Welsh plant only. The terms of this contract were similar to those of the first, including the escalation formula and formula intent clauses, except that the rates were to be adjusted quarterly based on the Interstate Commerce Commission Interim Mid–Quarter Forecast Index. The first contract continued in force as to the Flint Creek plant. Both contracts specified minimum and maximum quantities of coal to be shipped each year.

Each year since the effective dates of the contracts, Burlington has delivered and SWEPCO has received quantities of coal within the annual contractual ranges. Rates have been computed according to the formulas and indexes specified in each contract.

In the late 1980s, SWEPCO began to suspect that Burlington's costs of transporting coal were not increasing at the same rate at which the industry indexes were causing shipping charges to rise under the contract. Following unsuccessful negotiations with Burlington, SWEPCO filed this suit, claiming that under the contracts' formula intent clauses, it had suffered gross inequities as a result of unusual economic conditions which caused the formulas to fail to fairly cover changes in the cost of transporting the coal. SWEPCO sought damages for alleged overcharges caused by discrepancies between Burlington's actual shipping costs and the rates charged from 1987 to 1994.

The jury found that SWEPCO had not suffered a gross inequity under either contract as a result of the escalation formulas failing to fairly cover changes in Burlington's cost of transporting SWEPCO's coal.[3] In

response to additional questions, however, the jury found that Burlington had received an unjust enrichment of $100 million from SWEPCO's payments under both contracts ($25 million for Flint Creek and $75 million for Welsh).[4] The trial court later reduced this total to $71,663,258.00 pursuant to a pretrial litigation agreement between the parties to grant Burlington credit for a portion of SWEPCO's settlement with the other original defendants. The jury also found that SWEPCO was entitled to attorney's fees of $2 million. The court entered judgment on these findings. In addition, the court entered a declaratory judgment governing the shipping rates to be charged for the remainder of the life of each contract. The judgment declared that the rates calculated by the escalation formulas were interim rates and ordered that the correct and final rate for each future period under the contract be set at that amount necessary to compensate Burlington for changes in its costs of transporting SWEPCO's coal above or below the base costs specified in the original contracts.

Burlington contends that the trial court erred in submitting to the jury the questions regarding unjust enrichment. Burlington argues that recovery by SWEPCO of alleged overcharges under principles of unjust enrichment is barred because the issue of the rates to be charged for the coal shipments was fully addressed by the contracts themselves. Burlington asserts that the jury's finding that SWEPCO suffered no gross inequity, as defined in the contracts' formula intent clauses, prohibits SWEPCO from challenging the rates it paid under the express terms of the contract.

The doctrine of unjust enrichment belongs to the measure of damages known as quasi-contract or restitution. *LaChance v.*

3. The questions regarding gross inequity read as follows:
Do you find that SWEPCO has suffered a gross inequity as a result of unusual economic conditions resulting in the escalation formula in the [Flint Creek, Welsh] Contract ... failing to fairly cover changes in the Railroads' cost of transporting SWEPCO's coal tonnages from *Wyoming to Flint Creek above or below the* [1971, 1984] base cost level?
The jury answered "no" as to both contracts.

4. The questions regarding unjust enrichment read as follows:
Did the Railroads receive an unjust enrichment by retaining all or a part of the difference, if any, between the rate actually charged for shipping SWEPCO's coal tonnages from Wyoming to [Flint Creek, Welsh] and the rates that should have been charged?
The jury answered "yes" as to the rates for shipments to both power plants.

*Hollenbeck,* 695 S.W.2d 618, 620 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *see also* 1 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1.20 (rev. ed. 1993); 5 ARTHUR L. CORBIN, CORBIN ON CONTRACTS §§ 1102, 1104 (1964); 42 C.J.S. *Implied and Constructive Contracts* §§ 4–6 (1991); *cf. Ferrous Prods. Co. v. Gulf States Trading Co.,* 323 S.W.2d 292, 296–97 (Tex.Civ.App.—Houston 1959), *aff'd,* 160 Tex. 399, 332 S.W.2d 310 (1960). The purpose of restitution is to place an aggrieved plaintiff in the position he occupied prior to his dealings with the defendant. 42 C.J.S. *Implied and Constructive Contracts* § 6; 5 CORBIN § 1102. This purpose is accomplished by requiring the defendant to return to the plaintiff any rendered performance to which the defendant is not entitled. 5 CORBIN § 1102.

■ The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties. *See Lone Star Steel Co. v. Scott,* 759 S.W.2d 144, 154 (Tex.App.—Texarkana 1988, writ denied). When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff. *Barrett v. Ferrell,* 550 S.W.2d 138, 143 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); 42 C.J.S. *Implied and Constructive Contracts* § 5. Unjust enrichment is typically found under circumstances in which one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). Recovery under principles of unjust enrichment is also appropriate when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons. *City of Harker Heights v. Sun Meadows Land, Ltd.,* 830 S.W.2d 313, 319 (Tex.App.—Austin 1992, no writ).

■ A remedy such as unjust enrichment that is based on quasi-contract or a contract implied in law is unavailable when a valid, express contract governing the subject matter of the dispute exists. *Woodard v. Southwest States, Inc.,* 384 S.W.2d 674, 675 (Tex.1964); *Lone Star Steel,* 759 S.W.2d at 154; *see also* 42 C.J.S. *Implied and Constructive Contracts* § 5. Similarly, the doctrine of unjust enrichment does not apply when the contractual duty at issue has been performed. *Barrett,* 550 S.W.2d at 143.

■ The fact that a party to a contract has made a profit is an insufficient ground on which to order restitution on a theory of unjust enrichment. *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247, 250 (Tex.App.—Corpus Christi 1987, writ denied). The doctrine does not operate to rescue a party from the consequences of a bad bargain, and the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract. 42 C.J.S. *Implied and Constructive Contracts* § 5; *see also Harris v. Sentry Title Co.,* 715 F.2d 941, 949 (5th Cir.1983) (applying Texas law). Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall. *Heldenfels Bros.,* 832 S.W.2d at 42; *Austin v. Duval,* 735 S.W.2d 647, 649 (Tex.App.—Austin 1987, writ denied).

In this case, the rates charged for Burlington's hauling of SWEPCO's coal were fully governed by the terms of the contracts. The contracts established base rates to be applied initially and then incorporated formulas by which the rates were to be adjusted periodically. SWEPCO concedes that Burlington satisfied all of its contractual duties pertaining to the shipment of coal and that the rates assessed were in accordance with the formulas set out in the contracts.

The trial court is required to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). SWEPCO argues that the following sentence in each of the contracts' formula intent clauses required the trial court's submission to the jury of the unjust enrichment questions:

It is the intent of [the parties] that the formula described above will compensate [the railroads] for any changes in the cost of transporting SWEPCO's coal tonnages above or below the 1971 base cost level.

SWEPCO argues that under this provision, evidence at trial that the formula overcompensated Burlington for changes in its shipping costs raised an issue of unjust enrichment which the court was required to submit to the jury.[5]

SWEPCO's reliance on a contractual provision to justify the court's submission of the unjust enrichment questions exhibits a misunderstanding of the basis of the unjust enrichment doctrine. SWEPCO is actually arguing that Burlington breached the formula intent provisions of the contracts by charging excessively high rates pursuant to the escalation formulas. SWEPCO's pleadings properly complained of this alleged breach by claiming that the rates had risen so high as to constitute a gross inequity as defined in the formula intent clause. Not only was this claim the primary ground of recovery SWEPCO pursued at trial, it was in fact the only valid ground. The jury failed to find that SWEPCO suffered a gross inequity under the contract. Because the issue of shipping rates was completely governed by the contract, there was no evidence to justify the court's submission to the jury of additional questions concerning unjust enrichment.[6]

SWEPCO cites the opinion of this court in *Bowers v. Missouri, K. & T. Ry. Co.,* 241 S.W. 509 (Tex.Civ.App.—Texarkana 1922, no writ), for the proposition that restitution may be awarded despite the existence of a contract between the parties. In that case, however, this court granted relief because the rate actually charged was higher than the rate agreed upon by the parties. In the present case, Burlington assessed only the rates expressly allowed by the contract.

SWEPCO cites numerous other cases in an attempt to support its novel interpretation of the unjust enrichment doctrine. *Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686 (1951); *Greer v. White Oak State Bank,* 673 S.W.2d 326 (Tex.App.—Texarkana 1984, no writ); *Acoustical Screens in Color, Inc. v. T.C. Lordon Co.,* 524 S.W.2d 346 (Tex.Civ.App.— Dallas 1975, writ ref'd n.r.e.); *Fun Time Ctrs., Inc. v. Continental Nat'l Bank,* 517 S.W.2d 877 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.). In each of the cited cases, however, the agreement contemplated by the parties was unenforceable, not fully performed, thwarted by mutual mistake, or void for other legal reasons. *See City of Harker Heights,* 830 S.W.2d at 319. We have been unable to locate any case in which an unjust enrichment remedy was allowed when the contested issue was governed by a valid contract. We hold that the trial court erred in submitting to the jury the questions regarding unjust enrichment and that the jury's awards pursuant to those questions are therefore improper.

 Burlington also contends that the trial court erred in granting the declaratory judgment establishing the method by which rates are to be assessed for the remainder of the life of each contract.[7] Declaratory judgments are reviewed under the same stan-

---

5. SWEPCO asserts that the jury question was valid as an element of an action for "money had and received," which belongs conceptually to the doctrine of unjust enrichment. *See Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686, 687–88 (1951); *Greer v. White Oak State Bank,* 673 S.W.2d 326, 329 (Tex.App.—Texarkana 1984, no writ).

6. We concur with the court's conclusion on similar facts in *Barrett* that:

There is nothing in the evidence to suggest that appellant obtained the funds wrongfully or that in good conscience and justice he should not be allowed to keep the consideration paid him.... Appellee does not aver fraud, accident, mistake, duress or bad faith on the part of appellant. Appellee is in no position to seek

restitution ... since appellant fulfilled his obligation under the agreement.

*Barrett v. Ferrell,* 550 S.W.2d 138, 143 (Tex.Civ. App.—Tyler 1977, writ ref'd n.r.e.).

7. SWEPCO maintains that Burlington has waived this point of error by failing to preserve the complaint through objection in the trial court. Burlington repeatedly moved for an instructed verdict on the declaratory relief requested by SWEPCO. Furthermore, following the entry of judgment, Burlington was not required to raise its insufficient evidence point on this issue in a motion for new trial, because the declaratory judgment itself was not an issue tried to the jury. Tex.R.App.P. 52(d).

dards as are other judgments and decrees. TEX.CIV.PRAC. & REM.CODE ANN. § 37.010 (Vernon 1986); *Truck Ins. Exch. v. Musick*, 902 S.W.2d 68, 69 (Tex.App.—Fort Worth 1995, writ denied).

In the declaratory judgment, the trial court held that the rates produced by the contracts' escalation formulas were interim rates and decreed that the final rates were to be based on the amounts necessary to compensate Burlington for any changes in the cost of transporting the coal above or below the base levels specified in the contracts. These declarations fatally conflict with the jury's answers to the two questions regarding gross inequities under the contract.

Issues of fact in a declaratory judgment proceeding may be decided by a jury. TEX. CIV.PRAC. & REM.CODE ANN. § 37.007 (Vernon 1986). The court's charge listed each of the material terms of the formula intent and gross inequity provisions of the contract and instructed the jury to interpret them. *Cf. Exxon Corp. v. West Texas Gathering Co.*, 868 S.W.2d 299, 302 (Tex.1993). The jury's answers of "no" to the two questions regarding the triggering of these contractual provisions constituted a refusal to find that calculation of the rates solely according to the escalation formulas resulted in a gross inequity to SWEPCO by failing to fairly cover changes in Burlington's costs of transporting the coal. The declaratory provisions in the judgment directly contradict the verdict because they effectively hold that use of the escalation formulas alone to calculate rates does in fact fail to fairly cover Burlington's cost changes. In light of the jury's verdict, the trial court had no authority to make the findings on which the declaratory judgment was based. *See Rathmell v. Morrison*, 732 S.W.2d 6, 16–17 (Tex.App.—Houston [14th Dist.] 1987, no writ). We hold that the declaratory judgment must be reversed because it failed to conform to the jury's verdict. TEX.R.CIV.P. 301.

The trial court based its award of attorney's fees on TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.009 and 38.001 (Vernon 1986). Section 37.009 allows the award of attorney's fees in declaratory judgment actions. Section 38.001 allows attorney's fees in a suit for freight or express overcharges. Because we invalidate both grounds of recovery contained in the judgment, the award of attorney's fees must be reversed as well.

SWEPCO raises two conditional cross-points to be considered by this court only in the event that we decide to reverse the trial court's judgment. *See Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 927 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.).

■ SWEPCO contends that the trial court erred in granting Burlington's motion for sanctions for abuse of discovery under TEX.R.CIV.P. 215(5) with regard to a copy of deposition testimony given in an unrelated proceeding by Burlington vice-president Richard Sandgren. The evidence indicated that Burlington made numerous requests in the months preceding trial for SWEPCO to produce all documents in its possession containing any testimony by Burlington employees or former employees. In April 1994, Burlington specifically requested production of any statements made by Sandgren. Counsel for SWEPCO testified that they became aware that the Sandgren deposition was in their possession sometime in September or October 1994. SWEPCO notified Burlington of the document's existence on October 7. Burlington repeated its request for the document during pretrial hearings on October 12 and 17. The document was ultimately produced to Burlington on October 21. Jury selection for the trial began on October 18, and opening statements were made on October 24.

The trial court based its imposition of the sanction primarily on a certification date contained on the front of the document in question. The date indicated that SWEPCO's attorneys obtained a certified copy of the deposition on September 11, 1994. The trial court held that, based on this certification date, it was an abuse of discovery for SWEPCO to fail to deliver the document until October 21.

■ A trial court's ruling on a discovery motion will be reversed only upon a showing that the court committed a clear abuse of discretion. *Global Servs., Inc. v. Bianchi*,

901 S.W.2d 934, 937 (Tex.1995). It was within the trial court's discretion to find that the certification date on the deposition established that SWEPCO had the document in its possession for an excessive length of time before producing it to Burlington. We overrule this cross-point.

 SWEPCO further contends that the trial court erred in allowing Burlington to introduce evidence of SWEPCO's financial condition. Evidence of a party's financial condition is admissible if it is pertinent to a material issue in the case. *See Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 366 (Tex.1987); *Mortgage Co. of Am. v. McCord*, 466 S.W.2d 868, 872 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). The court could have concluded that the evidence was relevant to the issue of whether SWEPCO suffered a gross inequity. The court did not abuse its discretion in admitting the evidence.

The trial court's judgment is reversed, and judgment is rendered that SWEPCO take nothing by its suit.

## OPINION ON MOTION
## FOR REHEARING

PER CURIAM.

 On motion for rehearing, SWEPCO directs the court's attention to a letter sent by Vernon A. Williams, Secretary of the Interstate Commerce Commission, to the trial court during trial of this matter. In the letter, Secretary Williams states that the certification date stamped on the Sandgren deposition is incorrect. The letter confirms that the correct date on which SWEPCO received the certified copy of the deposition from the ICC was not September 11, 1994, as the stamp indicates, but instead October 11, 1994. SWEPCO introduced this letter into evidence on November 16, 1994, and on the basis of the information contained therein, asked the trial court to reverse its earlier ruling excluding the Sandgren deposition. The court once again refused to admit the deposition, however, ruling that SWEPCO had still failed to show good cause for not producing the document earlier. SWEPCO now contends that the trial court abused its

discretion in excluding the deposition after receiving uncontroverted evidence that the original certification date was incorrect, and that this error probably caused the rendition of an improper judgment.

After reviewing the record, we believe that it was within the trial court's discretion to exclude the deposition despite the evidence of the incorrect certification date. Counsel for SWEPCO told the trial court that it discovered the document in its files on September 30, 1994. The deposition itself, however, was taken in an unrelated proceeding before the ICC on June 21, 1979. In a request for production made April 28, 1994, Burlington asked SWEPCO to produce any sworn testimony given previously by Sandgren which SWEPCO intended to use at trial. SWEPCO responded that it had no such statements in its possession.

On October 7, 1994, counsel for SWEPCO sent a letter to Burlington stating that it had discovered the Sandgren deposition in its files. In the letter, SWEPCO identified the date of the deposition and the docket number of the proceeding in which it was taken, but did not include a copy of the document. Burlington then made specific requests on October 12 and October 17 for a copy of the document. SWEPCO finally produced a copy of the document on October 21, after trial had begun.

Based on this evidence, the trial court could have found that SWEPCO had a duty to furnish the document to Burlington earlier than it did. The evidence indicated that the document was in the files of SWEPCO's counsel long before it was claimed to have been discovered. The trial court could have concluded that had SWEPCO been diligent in responding to the request for production, it could have located and furnished the document earlier. Furthermore, the court could have found that it was unreasonable for SWEPCO to fail to enclose a copy of the deposition in the letter notifying Burlington of the existence of the document, and that SWEPCO's ultimate production of the document after trial had begun was therefore unreasonably late. *See Foster v. Cunningham*, 825 S.W.2d 806, 808–09 (Tex.App.— Fort Worth 1992, writ denied) (evidence dis-

covered five days before trial properly excluded where counsel had convenient opportunity to promptly apprise opposing counsel of the evidence, but failed to do so). The trial court thus did not err in excluding the deposition.

Furthermore, even if we believed that the court's exclusion of the evidence was error, we would hold that the error was not so serious as to warrant reversal. SWEPCO argues that the excluded testimony was crucial, because it demonstrated that Sandgren, a top Burlington official, once interpreted the gross inequity clause of the contracts in the same manner SWEPCO urged that they be interpreted at trial. The trial court allowed SWEPCO, however, to offer extensive evidence of substantially similar statements made by other high-ranking Burlington officials. SWEPCO relied heavily on this evidence in its arguments to the jury, advancing precisely the theory it now claims it was precluded from presenting at trial. Because the excluded evidence was thus substantially similar to other, admitted evidence, any error committed by the trial court probably did not cause the rendition of an improper judgment in this case. Tex.R.App.P. 81(b)(1).

The motion for rehearing is overruled.